IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JAHQUELL DAVIS,

      Appellant,

 v.                                        Case No. 5D17-745

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed August 31, 2018

Appeal from the Circuit Court
for Orange County,
John H. Adams, Sr., Judge.

James S. Purdy, Public Defender, and
Thomas J. Lukashow, Assistant Public
Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Rebecca Rock
Mcguigan, Assistant Attorney General,
Daytona Beach, for Appellee.

EDWARDS, J.

      This case deals with the application of the *Melton*[1] elements to Appellant's claim

that his transport to and lengthy detention at the sheriff's office constituted an "arrest" for

purposes of Florida's speedy trial rule, which requires a person charged with a felony to

_____

[1] *Melton v. State*, 75 So. 2d 291 (Fla. 1954).

be tried within 175 days of arrest.  *See* Fla. R. Crim. P. 3.191(a), (d).[2]  Appellant, Jahquell Davis, argues that he was "arrested" on May 29, 2014, when he and several others were transported to the sheriff's office.  Over a period of several hours, each was questioned in turn by a single detective as part of an investigation into a violent robbery that occurred earlier that day at a metal recycling facility.

When it was Appellant's turn to be interviewed he agreed to talk with the detective and voluntarily submitted to DNA and gunshot residue testing at the station.  Following a pre-trial evidentiary hearing, the trial court denied Appellant's speedy trial-based motion for discharge.  Appellant was tried, found guilty of attempted first-degree murder with a firearm, robbery with a firearm, and conspiracy to commit robbery with a deadly weapon, and sentenced to forty years in the Department of Corrections.  We agree with the trial court's factual findings and its legal conclusion that an investigatory detention took place on May 29, 2014, which did not constitute an arrest for speedy trial purposes.  For the reasons set forth in more detail below, we affirm the trial court's denial of Appellant's motion for discharge.

A trial court's ruling on a speedy trial-based motion for discharge presents mixed questions of fact and law.  *See State v. Glatzmayer*, 789 So. 2d 297, 301 (Fla. 2001).  The trial court's factual findings must be sustained if supported by competent, substantial evidence, but its legal conclusions are subject to de novo review.  *Id.*

---

[2] The Florida Supreme Court adopted rule 3.191 in 1971 to provide a procedural mechanism for ensuring that the constitutional right to a speedy trial guaranteed by the Sixth Amendment is enforced in this state. *State v. Lott*, 286 So. 2d 565, 566 (Fla. 1973).

2

BACKGROUND FACTS

On May 29, 2014, sheriff's deputies responded to a robbery and shooting at OU Metal Recycling. Video surveillance was used to identify the getaway vehicle involved in the robbery; it was later found outside a house. Using a loudspeaker, deputies ordered the occupants out of the house. When nobody responded to that command, the S.W.A.T. team was deployed to the scene. The stand-off ended approximately ninety minutes later, when Appellant, four other males, and two females exited the house. The males were instructed to stand along the curb near the house while a show-up was conducted, during which one victim recognized one of the men—not Appellant—as the driver of the getaway vehicle.

Deputies believed that it would be impractical to interview the five males at the house because it was in a high crime area, the S.W.A.T. team and news media surrounded the area, and the detective handling the investigation had multiple people to interview. Accordingly, the males were handcuffed, placed into individual squad cars, transported to the sheriff's department, and placed in separate rooms in a secured area of the building, where their handcuffs were removed. After being read their *Miranda*[3] rights, they were sequentially interviewed by the same detective. All the males were eventually swabbed for gunshot residue and DNA.

The detective, who referred to Appellant's status as "investigative detention," began his interview of Appellant by apologizing for the delay in getting to him. Appellant testified at his evidentiary hearing that he agreed to speak to the detective and consented

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

to the gunshot residue and DNA testing because he wanted to help and also wanted to clear his name. During this time, Appellant was not informed he was free to leave. Indeed, outside the door of his interview room was a uniformed deputy who would not have permitted him to leave. During the approximately four to six hours that Appellant was at the sheriff's department, he was never told he was under arrest, that he was suspected of committing the robbery, or that he was charged with any crime.

The detective ended his interview of Appellant by advising him that he was not under arrest and that he was free to leave. The detective offered Appellant transportation, which Appellant declined. At the time Appellant was released, there was no information connecting him to the robbery or shooting beyond his presence at the house where the getaway vehicle was found.

Appellant was not formally arrested until June 17, 2015, after the investigation was essentially completed and after two different witnesses identified Appellant as one of the robbers. The information charging Appellant was filed on June 19, 2015. Appellant moved for discharge, arguing that his prosecution was barred by Florida's speedy trial rule as far more than 175 days had passed since his May 29, 2014 detention.

Appellant preserved this speedy trial issue by making a pre-trial motion, seeking a writ of prohibition, renewing his motion during trial, and pursuing this timely appeal following his jury trial and conviction.

ANALYSIS

The only disputed legal issue is whether Appellant's detention on May 29, 2014, constituted an arrest for speedy trial purposes. If it was an arrest for speedy trial purposes, then he was entitled to a permanent discharge as requested because of the

4

time that passed between detention and trial.  However, as the trial court did below and as we do now, employing the four *Melton* elements to analyze Appellant's May 29, 2014 detention leads to the conclusion that the detention was not an arrest for speedy trial purposes.

Before we begin our analysis of whether this was an "arrest," it is important to recognize and acknowledge that a person may be "in custody" for purposes of requiring *Miranda* warnings, yet not have been "arrested" for purposes of the speedy trial rule. *Williams v. State*, 757 So. 2d 597, 599 (Fla. 5th DCA 2000) (citing *Griffin v. State*, 474 So. 2d 777, 779 (Fla. 1985)).  Likewise, police "seizure" of an individual may trigger Fourth Amendment protection and yet not constitute an arrest for purposes of speedy trial.  *Id.* The rights listed in the *Miranda* warnings and the Fourth Amendment's protection against unreasonable search and seizure are triggered when a person is taken into custody or seized, regardless of whether any criminal charges are contemplated or levied.

The Sixth Amendment guarantees the accused a speedy trial to limit the duration of possible public scorn, adverse impact on employment, and other consequences brought about by arrest or indictment that can only be cleared by a verdict of not guilty or permanent dismissal of the charges.  *See Klopfer v. North Carolina*, 386 U.S. 213, 222 (1967).  "This guarantee [of a speedy trial] is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself."  *United States v. Ewell*, 383 U.S. 116, 120 (1966); *see also State v. Lott*, 286 So. 2d 565, 566 (Fla. 1973) (quoting *Ewell with approval*).  Given that the speedy trial rule is designed to protect against the adverse impacts of arrest or

indictment pursuant to criminal charges, it follows that the right to a speedy trial is triggered only "(1) when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged or (2) when the person is served with a notice to appear in lieu of physical arrest." Fla. R. Crim. P. 3.191(d).

Appellant, the State, the trial court, and this court all agree that the seminal case on what constitutes an arrest under the speedy trial rule is *Melton v. State.* In that case, the Florida Supreme Court defined an arrest as follows:

> It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is "the apprehension or taking into custody of an alleged offender, in order that he [or she] may be brought into the proper court to answer for a crime." When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.

*Melton*, 75 So. 2d at 294 (internal citations omitted).[4] All four *Melton* elements must be present to conclude that an arrest has occurred. *Brown v. State*, 623 So. 2d 800, 802 (Fla. 4th DCA 1993).

The first *Melton* element is "[a] purpose or intention to effect an arrest under a real or pretended authority." 75 So. 2d at 294. Here, the detective testified that it was not his purpose or intent to arrest Appellant on May 29, 2014, because Appellant was not suspected of having committed any crime at that point. Thus, the trial court's pretrial factual finding that there was no purpose or intent to effect an arrest on May 29, 2014, is

---

[4] Although *Melton* was decided in 1954, it remains the benchmark for defining "arrest" and has been repeatedly cited for that purpose, including as recently as 2012 by our court. *See Ehmke v. State*, 86 So. 3d 591, 591 (Fla. 5th DCA 2012).

supported by competent, substantial evidence. The trial court received additional evidence as the case progressed which confirmed that there was initially no probable cause to support a legal arrest, and that Appellant was not a suspect on May 29, 2014. The DNA testing was inconclusive as to Appellant, and the deputy who performed the gunshot residue testing could not recall the outcome of the test performed on Appellant. The testimony at trial established that he only became a suspect much later, when a co-defendant identified Appellant as the shooter in exchange for a plea. As another result of their ongoing investigation, the police located somebody who was very familiar with Appellant and testified that Appellant was one of the robbers in the surveillance video, based on his physical traits, clothing, and other mannerisms. This additional evidence was relevant to Appellant's repeated renewal of his motion for discharge.

There are many similarities between the subject case and *State v. Lail*, in which detectives went to Lail's house and told him they received a complaint that he sexually abused his stepdaughter. 687 So. 2d 873, 873 (Fla. 2d DCA 1983). Lail agreed to go with them to further the investigation. *Id.* After reading Lail his *Miranda* rights, they placed him in a police car and drove him to the station where he remained for seven hours. *Id.* at 873-74. Initially, Lail was left alone in a holding cell for two hours while an officer went to the hospital to interview the victim. *Id.* at 874. After Lail again confirmed his willingness to talk and executed a *Miranda*-rights waiver form, a detective from the sex crimes unit interviewed Lail for approximately an hour and a half. *Id.* When his interview was completed, Lail stayed two more hours at the police station in order to voluntarily submit to a physical body inspection during which he provided hair and blood samples. *Id.* The detective testified that at that time the evidence was insufficient to establish probable

cause to justify an arrest. *Id.* Lail was released. Fifteen months later, Lail was arrested on a warrant and formally charged with sexual battery. *Id.* The trial court ordered Lail discharged, ruling that he had been arrested for speedy trial purposes when he was detained initially for questioning. *Id.* The Second District reversed, finding that the detention was an investigatory detention that did not trigger the running of the speedy trial time period. *Id.* at 875.

We note that there are two factual distinctions between *Lail* and this case. First, it is unclear from the opinion whether Lail was handcuffed, whereas here Appellant was cuffed for several hours on the day of his initial interview.[5] However, the fact that a defendant was handcuffed does "not convert [a] detention for questioning into an arrest." *Id.* (quoting *State v. Christian*, 442 So. 2d 988, 990 (Fla. 2d DCA 1983)). Second, Lail voluntarily accompanied the police to the station, whereas here Appellant was taken there involuntarily, although he testified that he voluntarily remained there to "help" and to "clear his name." In *Christian*, the Second District rejected the trial court's reasoning "that involuntary custodial interrogation by the police at the station was equivalent to an arrest which began the running of the speedy trial time." 442 So. 2d at 989–90. Therefore, those two factual differences do not change the applicability of *Lail* or the analysis of the first *Melton* element—there was no evidence of an intent to arrest on May 29, 2014.

According to *Brown*, the May 29 detention cannot constitute an arrest because one of the *Melton* elements was not present. 623 So. 2d at 802. Therefore, the trial court's decision that the speedy trial rule was not triggered can be affirmed based on the

---

[5] The trial court stated that Lail had been placed in a holding cell and handcuffed, while the court of appeal simply stated that there was no evidence that Lail was ever handcuffed. *Lail*, 687 So. 2d at 875.

absence of the first element alone. Nevertheless, for the purpose of completeness, we will look at the presence or absence of the other three elements.

The second *Melton* element is "[a]n actual or constructive seizure or detention of the person arrested by a person having present power to control the person arrested." *Melton*, 75 So. 2d at 294. It is undisputed that Appellant was actually seized and detained by the sheriff's deputies and the detective. Thus, the trial court's finding that the second *Melton* factor was satisfied is supported by competent, substantial evidence and is legally correct.

The third *Melton* element is "[a] communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest." *Id.* On May 29, 2014, Appellant was not formally arrested, in the sense that no booking report was prepared, no booking photos were taken, and Appellant was not fingerprinted. When initially denying Appellant's motion for discharge, the trial court found that there had been no actual communication from the detective to Appellant that he was under arrest or that the detective intended to arrest him. In fact, Appellant was not told on May 29, 2014, that he was under arrest. Following Appellant's voluntary submission to testing that day, the detective told Appellant that he was free to walk out of the sheriff's office, which is exactly what he did. Appellant's unconditional release parallels *Lail*, where that defendant was released following his lengthy detention. *See Lail*, 687 So. 2d at 874. Thus, the trial court's finding here that the third *Melton* element was absent is supported by competent, substantial evidence and is legally correct as well.

The fourth and final *Melton* element is "[a]n understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and

9

detain him." *Melton*, 75 So. 2d at 294.  Appellant argues that he had a reasonable belief that he had been arrested because he was forced from the house, handcuffed, involuntarily taken to the police station in a police car, and locked in the interview room for several hours.  Although nobody told him he was under arrest, nobody told him until the end of the day that he was free to leave.  These facts could support a finding that the detective's actions reasonably led Appellant initially to believe that he was under arrest, but Appellant's belief as to whether he was under arrest was not static.  As part of its reason for denying the motion for discharge, the trial court noted Appellant testified that after being at the sheriff's office for a period of time, he was cooperative in the interview and voluntarily submitted to testing.  The trial court stated that Appellant presented no evidence that an arrest was contemplated, and further found the fact that Appellant was released rather than arrested would have led to the understanding that the police did not intend to arrest him then and there.  Thus, the trial court's determination that the fourth *Melton* element was lacking is supported by competent, substantial evidence and is legally correct.

Appellant relies heavily on this court's opinion in *Griggs v. State*, 994 So. 2d 1198 (Fla. 5th DCA 2008), to argue that the deputies' actions and what happened to him during his four- to six-hour detention amounted to a de facto arrest that triggered the speedy trial rule on May 29, 2014.  First of all, Appellant's reliance on *Griggs* is misplaced because of significant factual differences between the two cases.  In *Griggs*, the police performed a traffic stop of Griggs because they already had information of his involvement in a drug transaction.  *Id.* at 1199.  While at the scene of the traffic stop, a K-9 unit alerted to methamphetamines in Griggs's car and the drugs were removed from the vehicle by one

10

of the ten police officers present. *Id.* A police investigator then asked Griggs if he wanted to "come down to my office and talk about it." *Id.* Thus, unlike in the instant case, the police in *Griggs* had every reason to suspect that Griggs had committed a crime before they began their encounter and certainly as they took him in. While Griggs agreed to go to the station where he was questioned, our court predicted that had Griggs refused the invitation, "[h]e would instead have been taken directly to jail." *Id.* at 1201. In fact, the investigator told Griggs he would only let him go if he agreed to act as a drug informant for the investigator. *Id.* at 1199. After agreeing to be an informant, Griggs was released. *Id.* The investigator testified that if Griggs had not agreed at that time to act as an informant, he would have been immediately booked and jailed. *Id.* That testimony established an intent to effect an arrest which would *not* be carried out only if, first, Griggs spoke with them and, second, he agreed to be an informant. In both cases the police officers denied they ever used the word "arrest." *Id.* Importantly, Griggs "testified that he thought he was under arrest because he had been told by police officers on two occasions that he occupied that unfortunate status." *Id.* On the other hand, here, Appellant never claimed that an officer told him he was under arrest.

In *Griggs*, our court analyzed the facts using the *Melton* elements and concluded that all four elements were present, meaning that Griggs had been arrested for speedy trial purposes and was entitled to discharge because he had not been charged or tried until more than a year after the traffic stop and custodial questioning. *Id.* at 1201. Somewhat confusingly, although this court acknowledged that the right to a speedy trial was a Sixth Amendment right codified in a rule of criminal procedure, the opinion discusses Florida's stop and frisk law, which protects the Fourth Amendment rights to be

11

free from unreasonable search and seizure. However, Griggs did not raise any Fourth Amendment issues. Continuing down that same path, the *Griggs* opinion then cites to and quotes from several cases that each dealt with Fourth Amendment search and seizure issues, but none of which dealt with speedy trial issues. Similarly here, Appellant claimed no violation of his Fourth Amendment rights. Thus, Appellant erroneously relies upon the discussion of Fourth Amendment law in *Griggs* to argue that the *Melton* elements are trumped by involuntary, custodial questioning.

Notably, eight years before deciding *Griggs*, we decided *Williams v. State*, in which we explicitly stated that it was possible to be seized for Fourth Amendment purposes without being arrested for speedy trial purposes. 757 So. 2d 597, 599 (Fla. 5th DCA 2000). Twenty-seven years before *Griggs*, we decided *State v. Naughton*, in which we noted that even an actual or constructive seizure or detention of the person to be arrested would not constitute being "in custody" for speedy trial purposes. 395 So. 2d 581, 582–83 (Fla. 5th DCA 1981). Our opinion in *Griggs* makes no mention of the *Williams* or *Naughton* cases, nor does it mention any of the many other cases that noted the importance of distinguishing between an "arrest" for speedy trial purposes and a "seizure" for Fourth Amendment situations or being placed in "custody" for *Miranda* rights purposes.[6] The Sixth Amendment guarantees the accused a speedy trial. As the

---

[6] *See Griffin v. State*, 474 So. 2d 777, 779 (Fla. 1985) (noting that a seizure may trigger Fourth Amendment protections without being a technical arrest, and that a person may be "in custody" for *Miranda* but not speedy trial purposes); *Christian*, 442 So. 2d at 989 (noting that "[a] person may be deemed 'in custody' for purposes of his *Miranda* rights, yet not 'in custody' for purposes of the speedy trial rule"); *Dean v. Booth*, 349 So. 2d 806, 807 (Fla. 2d DCA 1977) (holding that although defendant taken to the police station for questioning was "in custody" for *Miranda* purposes, he was not "in custody" within the meaning of the speedy trial rule); *Snead v. State*, 346 So. 2d 546, 547–48 (Fla. 1st DCA 1976) (finding that defendant taken to station for questioning and released

12

discussion of Fourth Amendment seizure has no bearing on being arrested for speedy trial purposes, Appellant's reliance on that portion of the *Griggs* opinion is unavailing.

We find that the trial court's factual conclusions are supported by competent, substantial evidence, and its legal conclusion—that Appellant was not arrested on May 29, 2014, for speedy trial purposes based on the *Melton* elements—is also correct. Accordingly, we affirm the denial of Appellant's motion for discharge.

We agree with the Fourth District's conclusion in *Brown*, 623 So. 2d at 802, that under the present state of the law all four *Melton* elements must be present for a custodial detention to constitute an arrest. In our opinion, requiring the presence of all four elements demands a level of clarity and certainty that is often lacking in these situations. It places too much emphasis on the presence or absence of any single element. Furthermore, two elements in the current test require the trial court to perform very subjective analysis. For element one, the court must somehow determine whether the officer subjectively intended to effect an arrest, and for element four, the court must divine the defendant's subjective understanding of whether the officer subjectively intended to effect an arrest. We believe that all concerned would be better served when considering speedy trial issues if a "totality of the circumstances" standard were employed, using more objective factors. Under the proposed changes no one element would be determinative, the need for analyzing predictable testimony regarding the subjective intent or understanding of the police or defendant would be minimized, and a proper balance could be struck between (1) giving the State leeway to investigate and build a case and (2)

without being charged was not in custody for speedy trial rule purposes, while declining to discuss whether in custody for Fourth Amendment purposes).

13

protecting the accused from unreasonably prolonged subjection to the potential personal, social, and economic harm attendant to being arrested for or charged with a crime. We recognize that under *Hoffman v. Jones*, 280 So. 2d 431 (Fla. 1973), we are not authorized to make these changes; so, we certify the following question to be of great public importance:

> Should the determination of whether an arrest has occurred for speedy trial purposes be based on an objective consideration of the totality of the circumstances, including but not limited to: (1) whether the person was detained with the intent to effect an arrest under a real or pretended authority; (2) whether there was an actual or constructive seizure or detention by someone with the present power to control the person detained; (3) whether there was a communication by the detaining officer to the person whose detention is sought of an intention or purpose then and there to effect an arrest; and (4) whether a reasonable person in the detainee's position would have understood that he or she was under arrest?

AFFIRMED; QUESTION CERTIFIED.

SAWAYA, J., concurs.
ORFINGER, J., concurring in result with opinion.

14

ORFINGER, J., concurring in result with opinion.                    CASE No. 5D17-745

Because I am bound by our supreme court's decision in Melton v. State, 75 So. 2d 291 (Fla. 1954), I concur, albeit reluctantly, with the result reached by the majority. However, I believe the four-part test established in Melton to determine when an arrest occurs is overly formalistic and relies too heavily on the subjective intent of the law enforcement officer who is questioning or detaining the individual.

The trial court denied Appellant's motion to discharge based on the first Melton element—"[a] purpose or intention to effect an arrest under a real or pretended authority," 75 So. 2d at 294—and concluded that the detective had no purpose or intent to arrest Appellant. In affirming that decision, the majority places great weight on both the first Melton element as well as the fourth Melton element—"[a]n understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him," id.—in concluding that the officer never communicated an intent to arrest Appellant. Both of these conclusions depend on the subjective intent of the police officer.

In my opinion, the subjective views of a police officer who detains an individual should have little bearing on whether the detention constitutes an arrest. Rather, an arrest should be determined using an objective standard—whether the individual's freedom of action is curtailed to a degree associated with a formal arrest, Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001), and how a reasonable person in the individual's position would have understood his or her position, Caso v. State, 524 So. 2d 422, 423 (Fla. 1988). The objective standard assesses the coercive effect of the police conduct, as a whole, and not the isolated details of the conduct. 5 Am. Jur. 2d Arrests § 5 (2018). In making this

15

assessment, the objective standard examines the totality of the circumstances, including the particular police conduct and the setting in which the conduct occurs. Id. Such an examination involves exploring, among others, the length of the detention; the restrictions placed on the individual's personal movement; the force, if any, that was exerted; the information conveyed to the individual; and the severity of the intrusion. United States v. Rasberry, 882 F.3d 241, 247 (1st Cir. 2018).

In this case, the detective described Appellant as being held in "investigative detention." One court defined "investigative detention" as

> a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause. . . . An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. Cortez [v. McCauley], 478 F.3d [1108,] 1115 [(10th Cir. 2007)] (quotations omitted). An investigative detention evolves into an arrest when the scope of police conduct is no longer reasonably related to the circumstances initially justifying the seizure. United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994). "An arrest is distinguished by the involuntary, highly intrusive nature of the encounter." Cortez, 478 F.3d at 1115 (quotation omitted).

Manzanares v. Higdon, 575 F.3d 1135, 1148 (10th Cir. 2009). Here, Appellant was handcuffed and detained for four to six hours. The duration of detention alone provides strong evidence that Appellant was under arrest rather than merely subject to an investigative detention. Id. (indicating that detention of 90 minutes or longer constitutes arrest, rather than investigative detention).

Further, it is well-established that an officer may temporarily detain an individual and investigate if the circumstances reasonably indicate that the detained individual has committed, is committing, or is about to commit a crime. § 901.151(2), Fla. Stat. (2014);

16

see also Terry v. Ohio, 392 U.S. 1, 38 (1968). However, the detention "shall not extend beyond the place where it was first effected or the immediate vicinity thereof." § 901.151(3), Fla. Stat. (2014). "Where . . . the detained individual is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, the courts have had little difficulty in construing such a detention to be a de facto arrest . . . ." Griggs v. State, 994 So. 2d 1198, 1201 (Fla. 5th DCA 2008) (quoting Saturnino–Boudet v. State, 682 So. 2d 188, 193 (Fla. 3d DCA 1996)). Here, Appellant was handcuffed, placed in a squad car, and transported away from the scene and to the sheriff's office where he remained under guard and not free to leave for the next four to six hours. This is further evidence that Appellant was under arrest rather than simply subject to an investigative detention.[7]

The majority holds the Appellant was not under arrest. But if not under arrest, what was his status? Is there something between a Terry stop and an arrest? I think not. To effectuate a Terry stop, the detention must be temporary, based on reasonable suspicion, and at the location of the stop. See § 901.151(3), Fla. Stat. (2014). To make an arrest, law enforcement needs probable cause. Here, the detective admittedly had neither and yet Appellant was detained for four to six hours. The majority never states what Appellant's status was while being detained. And if law enforcement needed more time to investigate, could Appellant's detention have been extended indefinitely?

To view the detention here as authorized creates a new level of citizen encounter not countenanced by Terry, a case decided well after Melton. I believe that we would be

---

[7] While the cases that I rely on are either search and seizure or Miranda cases, I believe they are applicable to the analysis here because an objective test is easier to apply and less influenced by the subjective views of the investigating officer.

17

well served by adopting an objective, totality of the circumstances test to determine if an arrest has taken place for speedy trial purposes.  However, because <u>Melton</u> continues to be controlling, I concur in the result reached by the majority.