# Supreme Court of Florida

_____

No. SC18-1627
_____

**JAHQUELL DAVIS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

December 19, 2019

LAWSON, J.

This case is before the Court for review of the decision of the Fifth District

Court of Appeal in *Davis v. State*, 253 So. 3d 1234 (Fla. 5th DCA 2018). In its

decision the district court certified a question of great public importance, which we

rephrase as follows:

> How should "arrest" be defined for purposes of starting the speedy
> trial period set forth in Florida Rule of Criminal Procedure 3.191,
> Florida's procedural "speedy trial rule"?

We have jurisdiction, *see* art. V, § 3(b)(4), Fla. Const., and approve the Fifth

District's decision. We determine that "arrest" in the speedy trial context should

mean formal arrest, which is the only type of detention by law enforcement that

implicates the Sixth Amendment speedy trial right. *See United States v. Marion*,

404 U.S. 307, 320 (1971).[1] Using formal arrest to start the procedural speedy trial period would best match our procedural rule to the substantive right that the rule is designed to protect. However, because this is arguably not how our current rule is written, we refer this issue to the Criminal Procedure Rules Committee of the Florida Bar, requesting that the Committee propose a rule amendment to effect this change. In the meantime, we adhere to *Griffin v. State*, 474 So. 2d 777, 779 (Fla. 1985), which adopted the "arrest" definition from *Melton v. State*, 75 So. 2d 291 (Fla. 1954), for purposes of determining when the speedy trial period begins under our current rule. Because the Fifth District properly applied the *Melton* test, we approve the decision below.

## BACKGROUND

As explained by Judge Edwards in the decision below:

> On May 29, 2014, sheriff's deputies responded to a robbery and shooting at [a business in Orange County, Florida]. Video surveillance was used to identify the getaway vehicle involved in the

1. Both parties in this appeal use the term "formal arrest" as meaning the type of detention addressed in *Marion*: the taking into custody of an individual pursuant to a probable cause determination and assertion, for the purpose of holding the person to answer in court for the crime or crimes specified. Although *Marion* does not use the term "formal arrest," other courts have also used "formal arrest" in connection with *Marion* to explain when a defendant's speedy trial right is implicated. *See Vargas v. Diaz*, No. 13-CV-01584-VC, 2015 WL 435459 *1, *4 (N.D. Cal. Feb. 2, 2015); *Mizell v. Warden*, *Madison Corr. Inst.*, No. 1:10-CV-53, 2011 WL 2636255, *1, *5 (S.D. Ohio July 6, 2011); *United States v. Whitty*, 688 F. Supp. 48, 56 (D. Me. 1988); *State v. Grant*, 658 N.E.2d 326, 329 (Ohio Ct. App. 1995).

robbery; it was later found outside a house. Using a loudspeaker, deputies ordered the occupants out of the house. When nobody responded to that command, the S.W.A.T. team was deployed to the scene. The stand-off ended approximately ninety minutes later, when [Jahquell Davis], four other males, and two females exited the house. The males were instructed to stand along the curb near the house while a show-up was conducted, during which one victim recognized one of the men—not [Davis]—as the driver of the getaway vehicle.

Deputies believed that it would be impractical to interview the five males at the house because it was in a high crime area, the S.W.A.T. team and news media surrounded the area, and the detective handling the investigation had multiple people to interview. Accordingly, the males were handcuffed, placed into individual squad cars, transported to the sheriff's department, and placed in separate rooms in a secured area of the building, where their handcuffs were removed. After being read their *Miranda* rights, they were sequentially interviewed by the same detective. All the males were eventually swabbed for gunshot residue and DNA.

The detective, who referred to [Davis's] status as "investigative detention," began his interview of [Davis] by apologizing for the delay in getting to him. [Davis] testified at his evidentiary hearing that he agreed to speak to the detective and consented to the gunshot residue and DNA testing because he wanted to help and also wanted to clear his name. During this time, [Davis] was not informed he was free to leave. Indeed, outside the door of his interview room was a uniformed deputy who would not have permitted him to leave. During the approximately four to six hours that [Davis] was at the sheriff's department, he was never told he was under arrest, that he was suspected of committing the robbery, or that he was charged with any crime.

The detective ended his interview of [Davis] by advising him that he was not under arrest and that he was free to leave. The detective offered [Davis] transportation, which [Davis] declined. At the time [Davis] was released, there was no information connecting him to the robbery or shooting beyond his presence at the house where the getaway vehicle was found.

*Davis*, 253 So. 3d at 1236-37.

The investigation continued, with two different witnesses ultimately identifying Davis as one of the robbers. *Id.* at 1237. Deputies then obtained a warrant for Davis's arrest, and Davis was arrested for crimes relating to the incident on June 17, 2015, more than a year after his custodial interview. *Id.* An information formally charging Davis was filed two days after his arrest. *Id.*

Prior to trial, Davis filed a notice of expiration of speedy trial and a motion for discharge, arguing that: (1) his detention for questioning on the day of the crime constituted an "arrest," which started the 175-day speedy trial period found in rule 3.191; and, (2) since the information was not filed until after passage of the 175-day speedy trial period, he was entitled to immediate and permanent discharge. *See, e.g.*, *State v. Agee*, 622 So. 2d 473, 475-76 (Fla. 1993) (determining that filing charges after the passage of the 175-day speedy trial period requires permanent discharge). The trial court denied the motion, applying a multi-factor test from *Melton* and concluding that the May 29 detention did not constitute an arrest for purposes of rule 3.191.

Following a jury trial at which Davis renewed his motion for discharge, Davis was convicted of attempted first-degree murder with a firearm, robbery with a firearm, and conspiracy to commit robbery with a deadly weapon. He received a forty-year sentence.

On appeal to the Fifth District, Davis again argued that he should have been discharged because the State violated the speedy trial rule by failing to file the charges against him within 175 days of his "arrest" on May 29, 2014, the day of his detention. *Davis*, 253 So. 3d at 1236-37. The Fifth District affirmed the trial court, applying *Melton*, and holding that the May 29 investigatory detention did not constitute an arrest for purposes of starting the speedy trial period in rule 3.191.

**ANALYSIS**

A trial court's ruling on a motion to discharge under the speedy trial rule presents mixed questions of law and fact. *Brown v. State*, 843 So. 2d 328, 330 (Fla. 1st DCA 2003). The trial court's factual findings will be sustained if they are supported by competent, substantial evidence. *Id.* We review de novo the trial court's application of the law to the facts. *Id.*

Under the Florida and federal constitutions, a criminal defendant has the right to a speedy and public trial. *See* U.S. Const. amend VI; art. I, § 16(a), Fla. Const.; *see also* Fla. R. Crim. P. 3.191. The United States Supreme Court has explained that the Sixth Amendment Speedy Trial Clause is "designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S.

1, 8 (1982). Significantly, the speedy trial right is in no way implicated by the length of an investigation or by the fact that an individual under investigation is a known suspect. *Id.* at 8-10.

Consequently, at the federal level, a suspect's speedy trial right is not implicated when the suspect is detained and released without being "arrested and held to answer" before a trial court for specified criminal charges. *Marion*, 404 U.S. at 321-22. The federal speedy trial time does not begin to run until formal arrest, when an accused is taken into custody for the purpose of being "held to answer" in court for specified criminal charges. *Id.* at 320-22. Formal arrest would therefore necessarily be preceded by a determination and assertion that probable cause exists to believe that the suspect committed the crime(s) for which he or she is being arrested. *Id.* at 320 ("To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime.").

Florida's speedy trial period begins to run "when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged." Fla. R. Crim. P. 3.191(d)(1).[2] Because this language assumes that charges at least are being filed as a result of the arrest, it could be read as requiring a formal arrest.

---

2. The speedy trial period also begins to run "when the person is served with a notice to appear in lieu of physical arrest." Fla. R. Crim. P. 3.191(d)(2).

However, for decades Florida courts have read rule 3.191 in light of *Melton*'s multi-factor test, without extensive consideration of the relationship between that test and a formal-arrest standard. For example, in *Griffin*, this Court was asked to read "arrest" in the speedy trial context as applying to the custodial interrogation of a murder suspect. 474 So. 2d at 778-79. This Court rejected the argument without much analysis, simply quoting the speedy trial rule and announcing that the detention in Griffin's case did not meet "the definition of a technical arrest set out in *Melton v. State*, 75 So. 2d 291 (Fla. 1954)." *Id.* at 779.

Interestingly, *Melton* defines arrest as "the apprehension or taking into custody of an alleged offender, *in order that he may be brought into the proper court to answer for a crime*." 75 So. 2d at 294 (emphasis added) (quoting Asher L. Cornelius, *The Law of Search and Seizure* § 47, at 156-57 (2d ed. 1930)). That, of course, is essentially the same definition that the United States Supreme Court used in *Marion* to describe an "arrest" that would implicate the speedy trial right. 404 U.S. at 321. However, the *Melton* court also sets forth a four-part test that does not include a probable cause assertion—which is central to formal arrest. According to *Melton*,

> an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest;

and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.

75 So. 2d at 294 (citing Cornelius, *The Law of Search and Seizure*, § 47; 6 C.J.S., *Arrest*, § 1).  As demonstrated by the decision below, thereafter, Florida courts began focusing technically on the four "elements," treating them as the Florida "test" and holding that when each element is satisfied, the rule 3.191 speedy trial period starts.  *Davis*, 253 So. 3d at 1238-41.  The Fifth District asked us to reconsider *Melton* because applying the "overly formalistic" four-part test, *id*. at 1243 (Orfinger, J., concurring in result with opinion),

> demands a level of clarity and certainty that is often lacking in these situations.  It places too much emphasis on the presence or absence of any single element.  Furthermore, two elements in the current test require the trial court to perform very subjective analysis.  For element one, the court must somehow determine whether the officer subjectively intended to effect an arrest, and for element four, the court must divine the defendant's subjective understanding of whether the officer subjectively intended to effect an arrest.

*Id.* at 1242.  We agree that Florida's focus on the *Melton* factors overcomplicates the inquiry.  We are also concerned that the narrowed focus on the *Melton* factors, along with the wording of the current rule, could, in theory, lead to a determination that an individual has been arrested for speedy trial purposes even though he or she was not arrested for the purpose of being held to answer in court for criminal charges.  Again, a procedural rule designed to protect a substantive right should come into play when the substantive right is implicated—not before.

- 8 -

As previously indicated, however, we think that this issue is best resolved by reconsidering the language of rule 3.191 in a rules case, rather than reconsidering *Griffin* in this case. Until a rule change is made, courts are to continue to look to *Melton* to determine when a person is arrested for speedy trial purposes. Here, the Fifth District properly applied *Melton* and correctly determined that Davis was not "arrested" for speedy trial purposes on May 29. We see no value in repeating that analysis here.

## CONCLUSION

For the foregoing reasons, we approve the Fifth District's decision and refer this matter to the Criminal Procedure Rules Committee of the Florida Bar.

It is so ordered.

CANADY, C.J., and MUÑIZ, J., concur.
POLSTON, J., concurs specially with an opinion.
LABARGA, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., specially concurring.

I agree with the majority that the Fifth District Court of Appeal properly applied the test in *Melton v. State*, 75 So. 2d 291 (Fla. 1954), and correctly determined that Davis was not "arrested" for speedy trial purposes on May 29, 2014. Accordingly, I would approve. I also agree with a referral to the Criminal

Procedure Rules Committee for evaluation of changes to the speedy trial rule, Florida Rule of Criminal Procedure 3.191.

LABARGA, J., concurring in part and dissenting in part.

The majority has referred Florida's long-standing speedy trial rule to the Criminal Procedure Rules Committee of the Florida Bar to reconsider the language of rule 3.191 as it concerns when a person is arrested for speedy trial purposes. In doing so, the majority has taken the position that "Florida's focus on the *Melton* factors overcomplicates the inquiry." Majority op. at 8. The majority added:

> We are also concerned that the narrowed focus on the *Melton* factors, along with the wording of the current rule, could, in theory, lead to a determination that an individual has been arrested for speedy trial purposes even though he or she was not arrested for the purpose of being held to answer in court for criminal charges. *Id*.

I agree with the majority that the Fifth District properly applied the *Melton* test in determining that Davis was not arrested for speedy trial purposes. I do not agree, however, with the majority's reasoning in support of abandoning *Melton's* established and well-reasoned four-part test for determining "arrest" and replacing it with the "formal arrest" standard. Implementing a formal arrest standard in Florida will alter the definition of arrest so radically that the concept of de facto arrest contemplated by *Melton* would be essentially eliminated. Elimination of de facto arrest would not serve the purpose of the speedy trial rule—to protect individuals from "unreasonably prolonged subjection to the potential personal,

social, and economic harm attendant to being arrested for or charged with a crime."

*Davis v. State*, 253 So. 3d 1234, 1242 (Fla. 5th DCA 2018).

A formal arrest standard would allow law enforcement to repeatedly detain an individual for an extended period of time without triggering any procedural protections.  What is more, law enforcement would be permitted to continue this practice until the expiration of the statute of limitations.[3]  In such circumstances, individuals would be left in procedural limbo, unsure of when or if they will be charged, and continually subjected to investigative detentions.  Such uncertainty is inconsistent with the right to a speedy trial.  While the federal judicial system has chosen to apply the formal arrest standard to determine when the right to speedy trial commences, this does not mean we should.  Indeed, this Court has "the duty to *independently* examine and determine questions of state law so long as we do not run afoul of federal constitutional protections or the provisions of the Florida Constitution that require us to apply federal law in state-law contexts."  *State v. Kelly*, 999 So. 2d 1029, 1043 (Fla. 2008).  Accordingly, Florida has the prerogative to afford its citizens the additional protections provided by *Melton* as presently set forth in rule 3.191 of the Florida Rules of Criminal Procedure.

---

3. Many crimes are not subject to the statute of limitations, *e.g.*, murder, capital child abuse.  In such instances, the practice of investigative detentions can go on indefinitely.

Because I see no need to change rule 3.191, I dissent to the decision to refer this matter to the Criminal Procedure Rules Committee for changes in line with the majority's view.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

      Fifth District - Case Nos. 5D17-745

      (Orange County)

James S. Purdy, Public Defender, and Steven N. Gosney, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

      for Petitioner

Ashley Moody, Attorney General, Tallahassee, Florida, and Wesley Heidt, Bureau Chief, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, Florida,

      for Respondent