DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**LERONCE JALINE MEELIQUE CHEEKS,**
Appellee.

No. 4D19-1408

[April 15, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Roger B. Colton, Judge; L.T. Case No. 502018CF011357AXXXMB.

Ashley Moody, Attorney General, Tallahassee, and Jonathan P. Picard, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and Scott Thomas Pribble, Assistant Public Defender, West Palm Beach, for appellee.

WARNER, J.

The State of Florida appeals from an order dismissing sexual battery charges against Leronce Cheeks for violation of speedy trial rules. The trial court found that Cheeks was functionally arrested on the day of the incident, although he was not formally arrested until a year later. The court erred, however, in its application of the four-part test of *Melton v. State*, 75 So. 2d 291 (Fla. 1954), which determines when an arrest occurs for purposes of speedy trial. Because the officers did not have an intent or a purpose to arrest Cheeks, did not communicate to him that he was arrested, and the evidence did not show that Cheeks thought he was arrested, three of the elements of that test were not met. We thus reverse.

On November 29, 2018, the State charged Cheeks with sexual battery of a victim which occurred on September 30, 2017. He was then formally arrested on the charge. Cheeks moved for discharge, alleging that for purposes of speedy trial, he was arrested when he was detained on September 30, 2017. He contended that, pursuant to Florida Rule of Criminal Procedure 3.191, he was entitled to immediate discharge because

the State failed to charge him before expiration of the 175 day speedy trial period. He alleged that his detention on the day of the incident constituted an arrest for speedy trial purposes, relying on various body-cam videos and videos from his interrogation at the police station.

The court conducted a hearing on the motion. The evidence consisted of a police body-cam video from the date of the incident, a video recording of Cheeks' interrogation, and testimony of the lead detective.

On September 30, 2017, a woman jogging in the early morning in West Palm Beach was approached from behind by a man who grabbed her in the groin area and digitally penetrated her vagina. The woman ran to her husband who was waiting in their vehicle a few blocks away and told him what happened. She then called 911. Shortly thereafter, she and her husband found the man and followed him in their vehicle. The woman's husband jumped out of his vehicle, grabbed the man (Cheeks), and held him down until police arrived. As found by the trial court in its order granting discharge:

> Police officers placed Mr. Cheek's (sic) in handcuffs, and commanded him to standup as he gasped for air. At least three officers immediately escorted him to a police car. (See body cam footage.)
>
> They physically searched Mr. Cheeks' (sic) by digging through his pockets, before putting him handcuffed in the police car. The officers found marijuana in Mr. Cheeks' pocket. They questioned him as he sat handcuffed in the back of the police car. He answered, and provided his name and address. He also provided his statement about what had just happened. He also said he had dropped his keys and cell phone while being chased, hit by a car, and tackled by a stranger. His shirt was also removed as the stranger wrestled him on the concrete. He described his dropped items and his car.

Video shows that Cheeks sat in the police car while police searched for and located his cell phone, shirt, keys and parked car. They towed his car to police headquarters.

When they arrived at the police station, Cheeks was placed in a holding cell, Police took his belt, money, and shoes. He remained there for four hours until two police detectives began to interview him. He was read his *Miranda* warnings. Cheeks asked the detectives if he was going to have to sit in the police station all day or whether police would explain things to

2

him at that time. The first detective told him "No, no, no, no, no, no, we're gonna talk and then, when we're done, we'll get ya outta here." Cheeks then described the incident that morning, stating he simply bumped into the victim. The second detective asked him if he would consent to provide DNA. He asked, "[W]ould I have to have a lawyer for that[?]" The detectives responded that he could consent. He signed the DNA consent form and swabs were taken.

At the end of the interview, Cheeks asked "What—what does happen here, like, you know for the like, what happens here?" The first detective responded, "We have to investigate. We have to investigate it, you know, we have to make sure that all the evidence matches everything that was said[,] and you know, it's just a matter of crossing all the t's and dotting all the i's. We just gotta make sure everything matches up." Cheeks then asked, "So I'm saying like what happens to me in terms of like what, am I going to jail or something? And then we have to like wait for a trial[?]" The detective responded, "[W]e're still trying to figure this out . . . obviously we don't wanna put somebody in jail for something that they may not have done, we don't want somebody in jail if they're, they're innocent, right? So, no, we haven't decided on that."

Cheeks then asked "[W]hat happens to my car, and my phone, and everything?" At that point, the officers left the room. When they returned, another officer was present, and that officer also interrogated Cheeks regarding the incident. Cheeks asked him, "[H]ey, I want to know if there's like a timetable on me being able to go? The officer said he would ask the detective who had been speaking to Cheeks before; however, he did not answer the question. At the end of the interview, Cheeks again questioned the officer about when he could leave, and the officer thought it would take less than two hours to finish.

There was a break, and one of the detectives and the officer returned and asked for the password to Cheeks' phone to verify that it was his. Cheeks showed them the code. Cheeks asked about his car and cell phone, and the detectives told him his vehicle would be released to him, but they would keep his cell phone until the investigation was through. They returned his belt, his watch and his car. Then Cheeks left. Twice he returned to the station to obtain his phone, which was finally released in February 2019. He was formally arrested on November 29, 2018, more than a year after the incident.

The first detective who interviewed Cheeks testified at the hearing on the motion for discharge. He explained that, typically, a sexual battery investigation would not be done on the side of the road. The detective

would bring potential suspects to the police station to interview them in most cases. Suspects in police vehicles being taken to the police station were, as a matter of policy, handcuffed for officer safety. With respect to the investigation of Cheeks, the detective did not believe he had sufficient probable cause to arrest Cheeks on the date of the incident, and Cheeks was never told that he was going to be arrested. The detective was at the beginning of his investigation and still had a lot of work to do. He needed a DNA test, and he wanted to look for video cameras in the neighborhoods to try to find witnesses. He testified that when someone is arrested, they are booked into the county jail, and he explained that the county jail is at the Palm Beach County Sheriff's Office, not the West Palm Beach Police Station. Cheeks had not been taken to PBSO that day.

After taking the matter under advisement, the trial court granted the motion for discharge. In its order, the court addressed the issue of whether Cheeks was arrested on the day of the incident. Pursuant to rule 3.191, speedy trial is triggered when the person is arrested, and the defendant is entitled to discharge if the State fails to file charges prior to the expiration of the speedy trial period. *State v. Williams*, 791 So. 2d 1088 (Fla. 2001). The court noted that "custody" is defined for purposes of speedy trial as "when [the person] is arrested as a result of the conduct or criminal episode which gave rise to the crime charged." *State v. Christian*, 442 So. 2d 988, 989 (Fla. 2d DCA 1983). A formal arrest, with booking and formal charges, is not necessary to start the running of the speedy trial rule. However, something more than an investigatory detention is required. 442 So. 2d at 989. A person may be deemed to be "in custody" for purposes of his *Miranda* rights yet not "in custody" for purposes of the application of the speedy trial rule. 442 So. 2d at 989.75.

The court set forth the four factors taken from *Melton* which must be met to find that a person has been arrested prior to a formal arrest:

> 1) whether the purpose or intent of the authority is to effect an arrest; 2) seizure of the person; 3) a communication by the arresting officer of an intention to effect an arrest; and 4) whether the person believes the arresting officer is there to arrest and detain him.

*See Melton*, 75 So. 2d at 294.

The court addressed all four factors, based upon "analysis of what a reasonable person would perceive." As to the first element, the purpose or intent to effect an arrest, the court found it was satisfied because police dug into Cheeks' pockets while he was handcuffed. This was a search

4

incident to arrest before transporting a suspect to be booked, and the complaining witness was there identifying him on the scene as the man who grabbed her. Element two—an actual or constructive seizure or detention of the person to be arrested—was satisfied, because Cheeks was seized by police when he was handcuffed and put in the police car. As to element three—a communication by the arresting officer to the person whose arrest is sought of an intention or purpose then and there to effect an arrest—the court ruled that where a detained person is physically removed from the scene and involuntarily transported to the police station for questioning and/or investigation, courts have construed this to be a de facto arrest. *Saturnino-Boudet v. State*, 682 So. 2d 188, 193 (Fla. 3d DCA 1996). Element four—an understanding by the person whose arrest is sought, that it is the intention of the arresting officer then and there to arrest and detain him—was satisfied, because the court found that any reasonable person would understand that they had been arrested after being handcuffed and forcibly placed in a police car at the scene of an alleged crime, transported to the police station, and placed in a holding cell, all taking place over a period of seven hours. The court pointed out that police towed Cheeks' car and took his belongings. Thus, the court ruled that there had been an arrest, speedy trial was violated, and Cheeks had to be discharged. The State now appeals.

Recently, the supreme court expressed the view that use of the *Melton* four-factor test to determine whether an arrest occurs for the purpose of the running of the speedy trial period has overcomplicated the issue. *See Davis v. State*, 286 So. 3d 170 (Fla. 2019). It noted that the federal speedy trial rule measured the right to speedy trial from the date of formal arrest, noting that the substantive Sixth Amendment right to a speedy trial is not implicated by lengthy investigation before that right attaches. *Id.* "[A] procedural rule designed to protect a substantive right should come into play when the substantive right is implicated—not before." *Id.* at 175. Despite this conclusion, the court opted to direct a rule change to address its concerns. "Until a rule change is made, courts are to continue to look to *Melton* to determine when a person is arrested for speedy trial purposes." *Id.* Consistent with that direction, we review the application of the *Melton* factors to this case.

*Davis* sets forth the standard of review of an order discharging a defendant for speedy trial violation.

> A trial court's ruling on a motion to discharge under the speedy trial rule presents mixed questions of law and fact. *Brown v. State*, 843 So. 2d 328, 330 (Fla. 1st DCA 2003). The trial court's factual findings will be sustained if they are

> supported by competent, substantial evidence. *Id.* We review
> de novo the trial court's application of the law to the facts. *Id.*

*Id.* at 173-74.

Rule 3.191(a), Florida Rule of Criminal Procedure provides that every person charged with a crime must be brought to trial within 175 days of arrest. The time period begins when the person is taken into custody. *Id.* "Custody" for purposes of the rule means "when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged." As noted in *Davis*, for years the Florida courts have applied the *Melton* four-part test to determine when an arrest is made for speedy trial purposes. *See e.g., Griffin v. State*, 474 So. 2d 777 (Fla. 1985). All four factors must be present for a custodial detention to be considered an arrest for speedy trial purposes. *Davis v. State*, 253 So. 3d 1234,1238 (Fla. 5th DCA 2018); *Brown v. State*, 623 So. 2d 800, 802 (Fla. 4th DCA 1993).

The trial court properly looked to the *Melton* factors to determine whether Cheek was arrested, but erred in its analysis of those factors. First, the court used the wrong analysis as to two of the factors. It evaluated them based upon "what a reasonable person would perceive," thus viewing each factor from an objective basis. *Davis*, however, cites with approval Judge Orfinger's concurring opinion in *Davis v. State*, 253 So. 3d 1234, 1242 (Fla. 5th DCA 2018), in which he noted that two of the elements required the trial court to determine subjective intent:

> [T]wo elements in the current test require the trial court to perform very subjective analysis. For element one, the court must somehow determine whether the officer subjectively intended to effect an arrest, and for element four, the court must divine the defendant's subjective understanding of whether the officer subjectively intended to effect an arrest.

Therefore, the court erred as a matter of law in analyzing these factors.

Applying the correct law to the factors, we conclude that Cheeks was not arrested on the date of the incident. Therefore, the speedy trial time did not run.

The first element requires that there be a purpose or intent of the authority to effect an arrest. The trial court found that because Cheeks was seized, and his pockets searched prior to being placed in the police vehicle, this was a search incident to a lawful arrest prior to booking the defendant, as he had already been identified by the victim. The detectives

6

testified, however, that standard procedures require a person to be searched before being placed in a patrol car for reasons of officer safety. Further, had the defendant been arrested, he would have been taken to the Palm Beach Sheriff's Office where the jail was located. Instead, he was taken to the police headquarters for questioning.

As noted in *State v. Lail*, 687 So 2d 873, 875 (Fla. 2d DCA 1997):

> The fact that a defendant has been handcuffed, however—or, as in this case, temporarily placed in a holding cell—goes to the involuntary nature of a detention and the entitlement to *Miranda* warnings. *State v. Christian*, 442 So. 2d at 990. It does "not convert [a] detention for questioning into an arrest." *Id.*

In *Lail*, officers received a report of a sexual battery Lail had committed against his stepdaughter. Officers arrived at his home, questioned him, and then asked him to accompany them to the police station for further questioning. There, he was placed in a temporary cell for hours, questioned for more hours, subjected to a body search, and ultimately released after seven hours. The court held that the *Melton* test had not been met. "While the record shows that the officers herein intended to question him, there is no showing that they intended to arrest him, that they told him he was under arrest, or that he otherwise understood he was under arrest." *Id.* at 874.

Similarly, in this case, while Cheeks was handcuffed, searched, placed in a police vehicle and driven to the station for questioning, there was no evidence that the officers, either at the scene or at the police station, intended to arrest Cheeks that day. In fact, the only testimony as to the officers' intent was that of the detective who interviewed Cheeks. He testified that they were not intending to arrest Cheeks, as they needed to do more investigation. That Cheeks was subject to a search prior to entering the vehicle, may impact his Fourth Amendment *Miranda* rights, but it does not establish an arrest for speedy trial purposes.

The second factor of *Melton* requires a seizure of the person. All parties agree that Cheeks was seized by the officers at the scene. Therefore, this factor was met.

Communication by the officer of an intent to arrest the defendant is the third factor. The trial court found that actual communication of an intent to make an arrest was not required; police actions could communicate an intent to arrest, citing to *Saturnino-Boudet v. State*, 682 So. 2d 188, 193

(Fla. 3d DCA 1996), for the proposition that removing a person involuntarily from the scene of a crime for the purposes of investigation or interrogation constitutes a de facto arrest. *Saturnino-Boudet*, however, involved the denial of a motion to suppress based upon Fourth Amendment violations, not a speedy trial issue. "A person may be deemed to be 'in custody' for purposes of his *Miranda* rights yet not be 'in custody' for purposes of the application of the speedy trial rule." *State v. Christian*, 442 So. 2d 988, 989 (Fla. 2d DCA 1983), citing *State ex rel. Dean v. Booth*, 349 So. 2d 806 (Fla. 2d DCA 1977), *cert. denied*, 358 So. 2d 129 (Fla.1978).

We disagree that actual communication of the intent to arrest is not necessary. Without actual communication, that factor would also require a subjective component condemned by the supreme court in *Davis*. And it would leave both authorities and suspects without the clarity necessary to gauge whether an arrest has occurred for purposes of speedy trial. We hold that communication of an attempt to arrest must be an express statement of intent to arrest. Here, there was none. The detectives never told Cheeks he was going to be arrested, and consistently explained that he would be free to go in a few hours. There was no communication of an intent to arrest. The third *Melton* factor is not satisfied.

Finally, *Melton's* fourth element requires an understanding by the suspect of the intention of the authorities to arrest and detain him. As noted in *Davis*, this involves a determination of the suspect's subjective understanding. Cheeks was never told he was arrested, and he never testified, relying instead on the video of his interrogations. But in the video, he did not evince an understanding that he was arrested. He continually asked when he could leave, and the detectives responded that he could leave as soon as they were finished with some of their investigation. They never told Cheeks that he would have to stay. No evidence shows that Cheeks subjectively understood that he was under arrest. Thus, the fourth factor was not established.

In conclusion, of the four *Melton* factors required to prove that a suspect has been arrested, three are not supported by the record evidence. Therefore, Cheeks failed to prove that he was arrested within the meaning of rule 3.191(c) for speedy trial purposes. The trial court erred in granting his discharge. We therefore reverse and remand for reinstatement of the charges against Cheeks.

*Reversed and remanded for reinstatement.*

KLINGENSMITH and KUNTZ, JJ., concur.

8

*        *        *

*Not final until disposition of timely filed motion for rehearing.*