# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D23-0330
LT Case No. 16-2017-CF-003961-AXXX

_____

DEANGELO GEORGE ROBINSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Adrian G. Soud, Judge.

Matthew J. Metz, Public Defender, and Robert J. Pearce, III,
Assistant Public Defender, Daytona Beach, for Appellant.

Ashley Moody, Attorney General, and David Welch, Assistant
Attorney General, Tallahassee, for Appellee.

February 2, 2024

PER CURIAM.

    The issues in this speedy trial case are whether (a) the four
factors in *Melton v. State*, 75 So. 2d 291 (Fla. 1954), were met; and
(b) what remedy is required if a violation of the right to speedy trial
is established. Based on the panel's opinions, (a) Chief Judge
Edwards and Judge Makar agree that the *Melton* factors were met
while Judge Boatwright disagrees, finding that factors one and
three were not met; (b) all judges agree that if the *Melton* factors

1

were met the remedy for a violation of the right to speedy trial under applicable precedent is to discharge the defendant, *see State v. Williams*, 791 So. 2d 1088, 1091 (Fla. 2001); (c) all judges agree that Robinson did not comply with the procedural requirements of Florida Rule of Criminal Procedure 3.191, Florida's speedy trial rule, which would have entitled him to a discharge; (d) parts III (A)-(B) of Judge Boatwright's opinion—in which Chief Judge Edwards and Judge Makar join—analyze and pass upon the question of whether *Williams* remains valid or should be reconsidered; and (e) all judges concur in the certification of the following question of great public importance:

> WHETHER THE HOLDING IN *STATE V. WILLIAMS*, 791 So. 2d 1088, 1091 (Fla. 2001), SHOULD BE MODIFIED TO CLARIFY THAT FLORIDA RULE OF CRIMINAL PROCEDURE 3.191 DOES NOT ESTABLISH SUBSTANTIVE RIGHTS INCLUDING THE RIGHT TO AUTOMATIC DISCHARGE AFTER EXPIRATION OF THE RULE'S PRESCRIBED TIME PERIOD?

REVERSED and REMANDED with instructions; QUESTION CERTIFIED.


EDWARDS, C.J., concurs with opinion.
BOATWRIGHT, J., concurs in part, dissents in part with opinion.
MAKAR, J., concurs in part and in result with opinion.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

EDWARDS, C.J., concurring.

Appellant, Deangelo George Robinson, appeals the order denying his motion for discharge based on the claimed expiration of the speedy trial period found in Florida Rule of Criminal Procedure 3.191.[1]  Florida Department of Law Enforcement ("FDLE") agents forcefully arrested, then searched, Robinson in Suwannee County pursuant to a Duval County warrant for his arrest on attempted murder and firearm charges.[2]  That Duval County warrant was the sole basis for pursuing and arresting him. Put another way, absent that warrant, FDLE's detention and search of Robinson would have completely lacked probable cause. After FDLE had him in handcuffs, they discovered drugs on his person and a search of his car revealed more illegal drugs and firearms.  For reasons unexplained, Duval County's attempted murder charges against him were put on the back burner. Robinson was turned over to Suwannee County where he was convicted and received a 20-month prison sentence on the drug and firearm possession charges.  The issue on appeal is whether postponing prosecution of the charges for which a defendant is initially arrested stops the speedy trial clock.  For the reasons explained below we hold that it does not.  We are compelled to reverse and remand for the trial court to grant Robinson's motion for discharge.

## BACKGROUND FACTS

---

[1] This appeal was initially filed in the First District Court of Appeal and was transferred to this Court pursuant to the realignment of districts on January 1, 2023.

[2] Robinson was previously convicted of possession of firearms by a convicted felon.

3

On March 29, 2015, Robinson's son accidentally hit another child with a homemade toy sword on a playground. That child's father asked Robinson's son to quit swinging that sword around. When Robinson learned of this event, he drove to the other child's apartment and confronted that child's father. It was alleged that after some discussion, Robinson retrieved a pistol from his car, walked up to that child's father and shot him in the head. Several witnesses identified Robinson as the shooter, leading the Jacksonville Sheriff's Office ("JSO") on April 7, 2015 to obtain a warrant for his arrest for the crimes of attempted murder and possession of a firearm by a convicted felon. Thus, the references to the Duval County charges and the Duval County warrant throughout this opinion.

<u>FDLE Search and Takedown</u>

Robinson proved to be elusive. The JSO sought assistance from the FDLE to try to locate and arrest Robinson on the active Duval County warrant. In late October of 2015, the FDLE determined that he was attending a large music festival in Suwannee County. The FDLE contacted the Suwannee County Sheriff's Office, advised they were bringing in FDLE teams to apprehend Robinson, and requested assistance in executing the Duval County warrant. The JSO did not participate in the Suwannee County operation.

On November 2, 2015, members of the FDLE's Special Operations Group[3] ("SOG") in one vehicle, followed Robinson from the music festival back to a Suwannee County motel. The deputies waited in a separate vehicle parked at an adjacent restaurant, 40–50 yards away from where the takedown was to occur. Those Suwannee County deputies would later testify that FDLE ran the entire operation, that FDLE was there specifically to arrest Robinson, and that the only reason for approaching and apprehending Robinson was to execute the Duval County warrant. Robinson was not on Suwannee County's radar at all for any local matters at that time.

---

[3] The FDLE SOG was compared by some witnesses to a SWAT team.

4

With guns drawn, FDLE agents approached Robinson near his vehicle, took him to the ground, and placed him in handcuffs.[4] The first Suwannee deputy took about ten seconds to run over to where the takedown had already occurred, arriving after the FDLE had Robinson on the ground in handcuffs. The second Suwannee deputy reached the scene a few seconds later. FDLE agents told the deputies there was a gun in Robinson's vehicle; the deputies went to the car and confirmed that. As FDLE officers patted down the handcuffed Robinson, they found illegal drugs which they handed over to the deputies. A more detailed search of the vehicle revealed more drugs and firearms. The first Suwannee County deputy prepared one probable cause affidavit that said in part, "[a]fter arrest of the defendant, vehicle was found to have a concealed firearm, plain view, drugs in the center portion vehicle between the seats." The same deputy prepared another probable cause affidavit that said, "[t]he Suwannee County Sheriff's Office assisted FDLE in an arrest of the above-named defendant for murder in Jacksonville, Florida."

### Booked and Convicted on "Local Charges"

That same day, November 2, 2015, FDLE turned Robinson over to Suwannee County so that he could be booked into their jail. Initially, the Suwannee deputies expected that Robinson would be transported to Jacksonville to face the charges set forth in the active Duval County warrant. At some point, it was agreed that Suwannee County would prosecute Robinson on the drug and firearms possession crimes, which were termed the "local charges." No explanation was given for delaying Robinson's prosecution on the more serious Duval County charges. The paperwork prepared by the Suwannee County deputies reflected that Robinson was being booked into their jail only on the local charges. The deputies were unable to include detailed information in their booking reports about the Duval County charges because they never had a copy of that warrant.

---

[4] Robinson did not resist the FDLE officers during the takedown.

5

Robinson was charged and convicted in Suwannee County on the local drug and firearms charges. He was sentenced to serve 20.4 months in prison. Two days before the end of that sentence, he was transported to Jacksonville on April 28, 2017. On the following day he went through the first appearance process where he was formally charged and booked on the Duval County attempted murder and firearm charges set forth in the April 2015 Duval County warrant.

Robinson filed a motion for discharge, claiming that the November 2, 2015 takedown and detention by FDLE was an arrest for speedy trial rule purposes and that the speedy trial period had run before he was formally charged on the Duval County charges on April 29, 2017. The trial court scheduled a hearing during which the State presented the testimony of the two Suwannee County deputies and Robinson testified on his own behalf.

After receiving evidence and entertaining argument of counsel, the trial court ruled that the speedy trial time had not run because, "the [Duval County] warrant was not served upon the defendant at the time FDLE officers and Suwannee sheriff's officers approached him on November 2, 2015." The trial court found that it was "very clear that April 28th of 2017 was the date that the defendant was served with a [Duval County] warrant and was detained or arrested, rather, on that warrant, notwithstanding the approach of November 2, 2015." The trial court's February 6, 2020 written order stated that the motion for discharge was denied for reasons stated on the record, referring obviously to the statements above. [5]

_____

[5] Robinson's petition for writ of prohibition filed in the First District Court of Appeal seeking review of the denial of his motion for discharge was per curiam denied by an unelaborated order. *Robinson v. State*, 326 So. 3d 1094 (Fla. 1st DCA 2021). That prior decision does not prevent this appeal. *See Topps v. State*, 865 So. 2d 1253, 1258 (Fla. 2004) ("[U]nelaborated orders denying relief in connection with all extraordinary writ petitions issued by Florida courts shall *not* be deemed to be decisions on the merits which would later bar the litigant from presenting the issue under the doctrines of res judicata or collateral estoppel unless there is a citation to authority or other statement that clearly shows that the

Robinson ultimately entered a "best interest" guilty plea on the Duval County charges. On October 13, 2022, he was adjudicated guilty and sentenced to serve 20 years in prison on the attempted murder charge and a concurrent 15 years on the firearms charge with 1994 days of jail credit.

This timely appeal followed.[6]

## STANDARD OF REVIEW

"A trial court's ruling on a speedy trial-based motion for discharge presents mixed questions of fact and law." *Davis v. State*, 253 So. 3d 1234, 1236 (Fla. 5th DCA 2018) (citing *State v. Glatzmayer*, 789 So. 2d 297, 301 (Fla. 2001)). "The trial court's factual findings must be sustained if supported by competent, substantial evidence, but its legal conclusions are subject to de novo review." *Id.* There are no disputes as to any findings of fact in this case. We are presented with pure questions of law involving application of the *Melton* elements and Florida Rule of Criminal Procedure 3.191.

## ANALYSIS

### Florida's Speedy Trial Rule

Rule 3.191 provides the mechanism by which a defendant may secure the constitutional right to a speedy trial. Fla. R. Crim. P. 3.191. The Sixth Amendment to the United States Constitution "guarantees the accused a speedy trial to limit the duration of possible public scorn, adverse impact on employment, and other consequences brought about by arrest or indictment that can only be cleared by a verdict of not guilty or a permanent dismissal of

_____

issue was considered by the court on the merits and relief was denied.").

[6] The trial court ruled and the State stipulated, below and on appeal, that denial of his motion for discharge was dispositive. *See Gilliam v. State*, 312 So. 3d 1280, 1281 (Fla. 1st DCA 2021). Thus, the issue is preserved for appeal.

7

the charges." *Davis*, 253 So. 3d at 1238 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222 (1967)). This Court has described the right to a speedy trial as "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *Id.* (citing *United States v. Ewell*, 383 U.S. 116, 120 (1966); *State v. Lott*, 286 So. 2d 565, 566 (Fla. 1973)).

Rule 3.191(a) provides that every person charged with a felony shall be brought to trial within 175 days of arrest, and the time period commences when the person is "taken into custody" as defined in 3.191(d), which reads in pertinent part:

> (d) **Custody.** For purposes of this rule, a person is taken into custody:
> (1) when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged;

Fla. R. Crim. P. 3.191. The rule is not self-executing as the defendant is normally required to serve a notice of expiration of speedy trial time, which results in a hearing within five days, and the requirement that the prosecution shall be ordered to bring the defendant to trial within ten days. *See* Fla. R. Crim. P. 3.191(p). That opportunity to bring the defendant to trial within ten days is referred to as the "recapture period." *Gilliam*, 312 So. 3d at 1282.[7] If the speedy trial period has run and the defendant is not brought to trial within the recapture period, on proper motion, the

---

[7] While not found in the rule, the Florida Supreme Court has held that the recapture period is not available to the State if it fails to file charges until after the 175 days has lapsed. *State v. Williams*, 791 So. 2d 1088, 1091 (Fla. 2001). We join our dissenting colleague in requesting the Florida Supreme Court to reconsider *State v. Williams* for the reasons set forth in parts III A and B of Judge Boatwright's opinion. The information charging Robinson with attempted murder in the first degree and possession of a concealed weapon by a convicted felon for the March 2015 shooting was filed June 19, 2017.

defendant "shall be forever discharged from the crime." Fla. R. Crim. P. 3.191(p)(3). To say the least, that is a dramatic remedy.

### "Arrest" as Defined by *Melton* Elements

Whether an arrest has occurred for purposes of Florida's speedy trial rule is not as clear as it could be. The word "arrest" means different things in different circumstances. "[A] person may be 'in custody' for purposes of requiring *Miranda* warnings, yet not have been arrested for purposes of the speedy trial rule." *Davis*, 253 So. 3d at 1238 (citing *Williams v. State*, 757 So. 2d 597, 599 (Fla. 5th DCA 2000)). "Likewise, police 'seizure' of an individual may trigger Fourth Amendment protection and yet not constitute an arrest for purposes of speedy trial." *Id.* The potential for confusion is exacerbated rather than mitigated by the supreme court's use of adjectives to refer to a "technical arrest" or a "formal arrest" as neither term is used in rule 3.191. *See Griffin v. State*, 474 So. 2d 777, 778 (Fla. 1985); *Davis v. State*, 286 So. 3d 170, 172 (Fla. 2019) (*Davis II*). To further complicate matters, the definition of "arrest" in Florida speedy trial jurisprudence differs from the federal speedy trial rule even though both are grounded in the same Sixth Amendment right.

Florida's speedy trial rule provides that "[t]he time periods established by this subdivision shall commence when the person is taken into custody as a result of the conduct or criminal episode that gave rise to the crime charges." Fla. R. Crim. P. 3.191(d). We might be tempted to end our analysis here, as Robinson's arrest on the Duval County charges resulted in him being taken into custody; however, we must continue. "A formal arrest, complete with fingerprinting and formal charges, is not always necessary to start the running of the speedy trial time." *State v. Christian*, 442 So. 2d 988, 989 (Fla. 2d DCA 1983). But "something more than an investigatory detention is required." *Id.*

The "seminal case on what constitutes an arrest under the speedy trial rule is *Melton v. State.*" *Davis*, 253 So. 3d at 1238. In *Melton*, the supreme court had this to say:

> It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is "the

9

apprehension or taking into custody of an alleged offender in order that he [or she] may be brought into the proper court to answer for a crime." When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.

75 So. 2d 291, 294 (Fla. 1954) (internal citations omitted). "All four *Melton* elements must be present to conclude that an arrest has occurred." *Davis*, 253 So. 3d at 1238 (citing *Brown v. State*, 623 So. 2d 800, 802 (Fla. 4th DCA 1993)).

The only *Melton* element at issue here is the third one. The first element is satisfied as it is clear that FDLE's purpose and intention on November 2, 2015, was to arrest Robinson under the authority of the Duval County warrant. The second element is also satisfied because FDLE agents did seize and detain Robinson by taking him down, handcuffing him, and turning him over to Suwannee County to be jailed. Element four was met, as Robinson testified that he understood that it was the FDLE agents' intent to arrest him there in the motel parking lot. When asked whether he felt like he was free to leave, Robinson testified that he was "definitely not free to leave" and "was scared to flinch because I figured they probably would have shot me if I would have." Commendably, the parties stipulated that *Melton* elements two and four have been established.

We turn our focus, then, to *Melton* element three—was there a communication by arresting officers, here the FDLE agents, to Robinson of an intention or purpose then and there to effect an arrest. Robinson testified during the hearing on his motion for discharge that the FDLE agents ran towards him with guns drawn, "saying they were there to arrest me for a warrant out of

10

Duval County." Immediately after that statement, Robinson was on the ground being handcuffed. In response to the State's cross examination, Robinson clarified the sequence of events: it was while the FDLE agents were trying to get him on the ground that they told him that they were arresting him for a Duval County warrant for attempted murder. This testimony is undisputed.

The State tries to undercut Robinson's testimony, pointing out that no FDLE agents testified during the motion hearing. Furthermore, the two Suwannee County deputies who did testify at the hearing said that they did not hear anybody tell Robinson he was being arrested on the Duval County warrant and neither of them mentioned the warrant to Robinson. However, the record is clear that the first Suwannee County deputy physically joined the FDLE agents about ten seconds after the takedown and the second deputy arrived still later. Both deputies testified that Robinson was already on the ground and in handcuffs by the time the deputies were actually on scene. One deputy testified that while he did not hear anybody say they were arresting Robinson on the Duval County warrant, he had to admit that he could not say that it did not happen. The trial court may have been free to reject Robinson's unrebutted testimony *if* he had found Robinson to not be a credible witness, but there was no such finding. Nor did the trial judge discuss whether or when Robinson was told by FDLE that he was being arrested on the Duval County warrant.

Robinson argues that the FDLE agents were required by law to inform him that they were arresting him on the Duval County warrant. He refers to section 901.16, Florida Statutes (2021), which states in pertinent part that "[a] peace officer making an arrest by a warrant shall inform the person to be arrested of the cause of arrest and that a warrant has been issued."[8] While we need not rely on that argument, neither will we accept the State's invitation to presume that the FDLE agents ignored section 901.16, especially in light of Robinson's unrebutted and unchallenged testimony that the agents complied with their

---

[8] There are statutory exceptions to this required communication of arrest based on a warrant, but none apply here.

statutory obligation to advise him that he was being arrested on that warrant as he was being taken to the ground and handcuffed. Further, law enforcement had no reason other than the warrant to approach, much less detain, Robinson prior to the take down.

The First District's case of *Gilliam v. State* dealt with similar issues. In August, 2018, Mr. Gilliam was stopped in St. Lucie County, Florida by a local law enforcement officer. *Gilliam*, 312 So. 3d at 1281. When the officer had dispatch check Gilliam's license it turned out he had "an extraditable felony warrant out of Duval County." *Id.* The officer reported that he then "placed Gilliam in custody and advised him why." *Id.* After placing Gilliam in custody, the officer searched his car and found both drugs and paraphernalia. He was booked into the St. Lucie County Jail on the local drug charges but was not booked on the Duval County warrant. *Id.* 1281–82. After spending sixteen months dealing with the St. Lucie County charges, he was released to the Duval County authorities on December 21, 2019. On February 3, 2020, the information on the Duval County charges was filed; the next day, Gilliam moved for discharge based on the speedy trial rule. *Id.* at 1282. The trial court denied his motion.

As the First District noted, "[t]he Florida Supreme Court has consistently held that the speedy trial period begins upon a defendant's initial arrest." *Id.* at 1283 (citing *Bulgin v. State*, 912 So. 2d 307, 310 (Fla. 2005)). "[T]he date of the original arrest is the focal point for speedy trial considerations, irrespective of changes made in charges." *Id.* (quoting *Weed v. State*, 411 So. 2d 863, 865 (Fla. 1982)). The First District conducted a *Melton* analysis and concluded that Gilliam's motion for discharge should have been granted. *Id.* 1284–85.

Just as in our case, the search of the defendant's vehicle in *Gilliam* occurred after he had been detained and placed in custody pursuant to a Duval County warrant. Absent the probable cause to arrest provided in both cases by Duval County warrants, law enforcement would have been conducting unlawful warrantless searches of Gilliam's and of Robinson's vehicles. However, both defendants were arrested on warrants; thus, the post-arrest searches in both cases were the legitimate bases for prosecution of the defendants on local charges. "Where a person is arrested

12

pursuant to a warrant issued by a magistrate, numerous cases have held that the person is in 'custody' within the meaning of the speedy trial rule." *Id.* at 1284 (quoting *Singletary v. State*, 322 So. 2d 551, 554 (Fla. 1975)). The fact that neither Gilliam nor Robinson were booked into the local county jail on a Duval County warrant is immaterial, as they were both detained and taken into custody because of their warrants.

Thus, despite some factual differences, *Gilliam* supports our conclusion under a *Melton* analysis that the speedy trial clock was triggered when FDLE agents arrested Robinson in Suwannee County on the Duval County warrant. The trial judge's denial of Robinson's motion for discharge was improperly based on when the Duval County warrant was formally served, which is not a *Melton* element, although it has been discussed but not adopted by the Florida Supreme Court as an event that might in the future trigger the speedy trial clock.

In both *Gilliam* and our case, the trial judges focused on when the defendant was formally advised of the Duval County charges, either by first appearance or service of the arrest warrant. That set of circumstances is what the Florida Supreme Court described as a "formal arrest" in *Davis II*. "We determine that 'arrest' in the speedy trial context *should mean* formal arrest, which is the only type of detention by law enforcement that implicates the Sixth Amendment speedy trial right." *Davis II*, 286 So. 3d at 172 (emphasis added). However, the supreme court then made it clear in *Davis II* that Florida's speedy trial rule, as written, did not require a "formal arrest." *Id.* The court defined "formal arrest," as used in federal speedy trial jurisprudence, as "when an accused is taken into custody for the purpose of being 'held to answer' in court for specified criminal charges." *Id.* at 174 (quoting *United States v. Marion*, 404 U.S. 307, 321–22 (1971)). The supreme court in *Davis II* went on to say that "[f]ormal arrest would therefore necessarily be preceded by a determination and assertion that probable cause exists to believe that the suspect committed the crime(s) for which he or she is being arrested." *Id.* Of course, in the matter now before us, the warrant for Robinson's arrest included the finding of a Duval County circuit judge that "there exists probable cause" to believe that Robinson committed the

13

crimes of attempted murder in the first degree and possession of a firearm by a convicted felon.

Whether Robinson's arrest based on the warrant might constitute a "formal arrest" is, for now, beside the point. This is because, rather than adopt the "formal arrest" standard used in federal proceedings, the Florida Supreme Court referred that proposed rule change to the Florida Bar's Criminal Procedure Rules Committee. Indeed, in *Davis II* the Court announced that "[i]n the meantime, we adhere to *Griffin v. State*, which adopted the 'arrest' definition from *Melton v. State*, for purposes of determining when the speedy trial rule period begins to run under our current rule." *Id.* at 172 (internal citations omitted). For whatever reasons, that referral did not result in a change in rule 3.191.[9] Thus, *Melton*, as we applied it above, still governs.

## CONCLUSION

Accordingly, we find that on November 2, 2015, when FDLE agents arrested Robinson in Suwannee County under authority of the Duval County warrant, the speedy trial time began to run. The fact that he was charged and convicted in Suwannee County for crimes that were based on contraband discovered incident to or following that initial arrest did not stop the speedy trial clock. As he was neither charged nor tried within 175 days from that date, he was entitled to have his motion for discharge granted. We are compelled to reverse the trial court's order denying that motion. We remand for entry of an order granting Robinson's motion for discharge, vacating the related judgment and sentence, and for any further proceedings related to terminating his imprisonment on the underlying charges.

---

[9] As discussed in Judge Boatwright's opinion, the Florida Supreme Court is considering just such a change in the rule.

14

BOATWRIGHT, J., dissenting in part, concurring in part.

I disagree with the majority's holding that all four *Melton* factors were present under the circumstances in this case. In particular, for the reasons explained below, I do not believe the record supports that Robinson established the presence of the first and third *Melton* factors. Thus, I would affirm the trial court's denial of Robinson's motion for discharge.

I.

On April 28, 2017, Robinson was served with the Duval County warrant at issue in this case. Subsequently, Robinson filed a motion for release, as well as a motion for an adversarial probable cause hearing, alleging that he had been arrested on the charges relevant to this case on April 28, 2017, but the State had not filed an information within the applicable time limits. On June 19, 2017, the State filed an information charging Robinson with attempted first-degree murder and possession of a firearm by a convicted felon. Based on the State filing the information, it appears that Robinson abandoned his two previous motions and then filed an unlimited waiver of his speedy trial rights waiving his constitutional rights and any rights under rule 3.191.[1]

Robinson then changed course and filed a motion for discharge pursuant to rule 3.191. In his motion, he alleged that he had actually been taken into custody on the Duval County warrant on

---

[1] Although not raised by either party on appeal, Robinson waived his speedy trial rights prior to filing his motion for discharge. He filed his waiver on October 2, 2017, after the 175-day period had elapsed. However, under Florida Supreme Court precedent addressing analogous circumstances, Robinson's post-expiration waiver would not foreclose his right to a discharge under rule 3.191(a). *See State v. Nelson*, 26 So. 3d 570, 579 (Fla. 2010).

15

November 2, 2015, when he was apprehended in Suwannee County, rather than April 28, 2017, the date on which he had previously claimed he was first arrested on the charges at issue. In the motion for discharge, Robinson argued that the State had failed to bring him to trial within 175 days of November 2, 2015. Robinson argued that he was entitled to discharge under rule 3.191 because the State had failed to file formal charges within 175 days after the date on which he was apprehended in Suwannee County. He contended that because he had been "arrested" within the meaning of rule 3.191 in Suwannee County on November 2, 2015, the State had until April 25, 2016, to bring him to trial, but it failed to do so. He further asserted that because the State had not filed an information within 175 days of November 2, 2015, the State was not entitled to a recapture period. Thus, he argued he was entitled to a discharge.

The trial court held a hearing on Robinson's motion for discharge. The State called two Suwannee County Sheriff's Office (SCSO) deputies, who had arrested Robinson on the Suwannee County charges, to testify regarding the circumstances surrounding Robinson's takedown on November 2, 2015. According to their testimonies, on October 30, 2015, a special agent with FDLE contacted SCSO, explaining that FDLE had located Robinson, who was wanted for charges in Duval County, at a park in Suwannee County, where he was attending a music festival. FDLE sought SCSO's assistance in apprehending Robinson because it was concerned about approaching him at a crowded music festival when he was known to be potentially armed. FDLE agents coordinated with SCSO deputies to orchestrate a takedown of Robinson. FDLE agents located Robinson as he was leaving the festival in a vehicle and followed him to a motel in Suwannee County.

The SCSO deputies were passengers in a separate vehicle driven by an FDLE special agent. The FDLE agent parked the vehicle at a nearby restaurant approximately 40 to 50 yards away from the motel. After the FDLE agents had positively identified Robinson, they effected the takedown as he was entering his vehicle in the parking lot of the motel. The SCSO deputies exited the vehicle immediately after they received the takedown command. It took their group approximately ten seconds to get to

16

the parking lot, where FDLE agents had Robinson on the ground. One of the SCSO deputies testified that the driver's side door of Robinson's vehicle was open, where he saw, in plain view, a gun that was partially hidden and a bag containing what he suspected were illegal mushrooms. The deputy also indicated that upon their arrival, an FDLE agent, noting the open car door, immediately remarked, "Do you see a gun? There's a gun." The SCSO deputies further observed that the FDLE agents had removed illegal drugs from Robinson's pocket during their search of his person. At that time, the SCSO deputies, who had been previously made aware by FDLE that Robinson was a convicted felon, decided to arrest Robinson as a result of the firearm and drugs that were found in plain view during the takedown. They arrested Robinson on charges of possession of cocaine, possession of marijuana over 20 grams, and possession of a firearm by a convicted felon. After a full investigation, he was additionally charged with trafficking in methamphetamine and possession of MDMA.

According to the SCSO deputies, they initially arrived on the scene to assist FDLE with the Duval County warrant, but they ultimately decided to arrest Robinson for the drug and firearm charges, which were entirely unrelated to the Duval County warrant. They testified that they never arrested Robinson on the Duval County warrant, nor did they ever advise him that he was under arrest for the Duval County warrant. They additionally stated that they never heard the FDLE agents tell Robinson he was under arrest for the Duval County charges. However, on cross-examination, one deputy was asked to speculate whether anyone could have mentioned the Duval County warrant to Robinson, to which he responded, "I could not say no," but reiterated that he never heard it being said.

The SCSO deputies wrote in the arrest affidavit for their local charges that Robinson had been arrested on the Duval County charges. However, they explained the reason for doing this was that they thought FDLE was independently going to arrest Robinson for those charges, which it never did. Rather, FDLE elected to allow SCSO to pursue the local charges, and it merely placed a detainer on Robinson for the Duval County charges. This detainer documentation was entered into evidence.

17

Robinson did not call any witnesses to testify at the hearing; however, he took the stand on his own behalf. Robinson testified that prior to the November 2, 2015 encounter, he knew he had an outstanding warrant for his arrest out of Duval County because his child's mother had apprised him of the warrant. Robinson then provided what could be construed as conflicting testimony regarding the exact statements by the FDLE agents. On direct examination, Robinson stated that as he was walking towards his vehicle, FDLE agents told him he was under arrest for the Duval County charges. However, on cross-examination, he stated he was only told that he was under arrest for the Duval County charges while he was being taken down to the ground by the FDLE agents and at no other time were the Duval County charges mentioned to him.

There were no other witnesses called to testify. Only the two SCSO deputies and Robinson testified at the hearing. The FDLE agents did not testify.

During closing arguments, the main focus was whether, under *Melton*, Robinson had been arrested on the Duval County warrant. Robinson's counsel argued that all four *Melton* factors were present, thus proving Robinson had been arrested for the Duval County charges within the meaning of rule 3.191 during the November 2, 2015 takedown. Robinson's counsel specifically focused on the presence of the third *Melton* factor, arguing that Robinson's testimony conclusively established the FDLE agents had communicated to him that he was under arrest for the Duval County charges.

The State argued that all four *Melton* factors were not present. In regard to the first *Melton* factor, although the State initially argued that the FDLE agents could have detained Robinson on reasonable suspicion based on the warrant, the State's primary contention was that the circumstances clearly established that FDLE's intent to arrest Robinson on the Duval County warrant immediately changed once the agents saw the contraband and firearm in plain view in Robinson's car. The State asserted that this was evidenced by FDLE's decision not to move forward on the Duval County warrant but rather to defer to the

18

SCSO deputies on the local charges, which were evident and substantial at the onset of the takedown.

The State additionally called into question Robinson's credibility. In particular, the State argued that the SCSO deputies testified they never heard the FDLE agents tell Robinson that he was under arrest for the Duval County charges, and Robinson admitted he previously knew about the warrant because his child's mother informed him of the charges. In addition, the State argued that Robinson's testimony was not credible because it was unlikely that the FDLE agents were advising Robinson of the Duval County warrant while they were securing him due to the high alert of the situation. Rather, it was more likely that they were making sure he was secure on the ground and that the other individuals in his party were secure instead of informing him of the charges in the first ten seconds of the takedown. The State concluded by arguing that Robinson had not been arrested on the Duval County charges such as to trigger rule 3.191, but that a detainer had been placed on him for those charges while he was being prosecuted for the Suwannee County charges.

The trial court then denied the motion for discharge, finding that Robinson had not been arrested on the Duval County charges—during the takedown or any other time. The court explained: "The approach of FDLE, the reason for their approach, meaning the warrant, does not render the conduct and the approach to the defendant and the searching of the defendant that of an arrest." The court additionally elaborated that the SCSO deputies had provided a valid explanation as to why they had initially stated in the arrest affidavit that Robinson had been arrested on the Duval County charges. The court indicated that it also relied on the State's documentation evidencing that a hold had been placed on Robinson for the Duval County charges as a result of the November 2, 2015 takedown, and it accordingly determined this to be a situation where a detainer was in place, rather than an actual arrest such as would trigger the provisions of rule 3.191.

II.

19

The right to a speedy trial is triggered "when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged." Fla. R. Crim. P. 3.191(d)(1). However, it should be noted that "a detainer placed by one county for a prisoner held by another county is not considered custody within the contemplation of the speedy trial rule so as to commence the running of the speedy trial time." *State v. Bassham*, 352 So. 2d 55, 56 (Fla. 1977). As delineated by the majority, the Florida Supreme Court in *Melton* articulated a four-factor analysis for determining whether a custodial detention constitutes an arrest and thus triggers the provisions of rule 3.191. 75 So. 2d at 294. For a court to conclude that an arrest has occurred within the meaning of rule 3.191, "all four *Melton* elements must be present." *Davis*, 253 So. 3d at 1238 (citing *Brown v. State*, 623 So. 2d 800, 802 (Fla. 4th DCA 1993)). Therefore, it is the defendant's burden to prove the existence of an arrest pursuant to *Melton* when filing a motion for discharge under rule 3.191. *See State v. Cheek*, 294 So. 3d 934, 941 (Fla. 4th DCA 2020) (finding that where the defendant did not establish all four of the *Melton* factors were present, he had failed to prove he was arrested within the meaning of rule 3.191 for speedy trial purposes).

This Court has recognized the difficulty in establishing the presence of all four *Melton* elements.[2] *Davis*, 253 So. 3d at 1242. Regarding these elements, our Court has said that "requiring the presence of all four elements demands a level of clarity and certainty that is often lacking in these situations" as it can place "too much emphasis on the presence or absence of any single element." *Id.* In particular, some elements require a very subjective analysis. For instance, under element one, "the court must somehow determine whether the officer subjectively

---

[2] This court previously argued that a totality of the circumstances test would be better in determining whether an arrest was made, rather than the formalities required by the *Melton* analysis. *Davis*, 253 So. 3d at 1242–43. However, on certification, the Florida Supreme Court declined to recede from the *Melton* analysis and instead advocated for a rule change. *Davis II*, 286 So. 3d. at 170.

intended to effect an arrest." *Id*. As evident in this case, proving the subjective intent of the arresting officer can be a challenge.

As to the first *Melton* factor, Robinson was required to establish that "there was a purpose or intention" by the law enforcement officers to effect an arrest on the Duval County warrant. The SCSO deputies were the only law enforcement officers who were present at the hearing. And although the SCSO deputies testified they had initially been contacted to assist FDLE with its efforts to effectuate an arrest on the Duval County warrant, they ultimately testified that they arrested Robinson solely on the local charges resulting from the contraband found during the takedown, which was in plain view. In addition, they indicated that the FDLE agents never asked them to arrest Robinson on the Duval County warrant, nor was Robinson arrested on the warrant. Thus, there was no proof that the SCSO deputies' intent was to arrest Robinson on the Duval County warrant.

In regard to the FDLE agents' intent, the SCSO deputies specifically indicated that the FDLE agent who initially apprehended Robinson, as he was entering his vehicle, immediately advised them of the contraband in plain view in Robinson's car, and the FDLE agents promptly deferred to the SCSO deputies to proceed forward in booking Robinson on the local charges. The importance of this is that the FDLE agents did not testify at the hearing, meaning the record is devoid of any testimony regarding their intent after they saw the contraband as they apprehended Robinson. The State's position was that the "situation turned" during the takedown when the FDLE agents saw the contraband in Robinson's vehicle and thus, their intent changed. This is a plausible theory of how the takedown occurred, and is consistent with the SCSO deputies' testimony that the Duval County warrant was not brought up based on what was discovered during the takedown. Obviously, the trial court deemed this argument persuasive when it found that "the approach of FDLE, the reason for their approach, meaning the warrant, does not render the conduct and the approach to the defendant and the searching of the defendant that of an arrest."

21

This case is therefore distinguishable from *Gilliam* v. *State*, which is relied upon by the majority. 312 So. 3d 1280 (Fla. 1st DCA 2021). In *Gilliam*, it was a St. Lucie County officer who apprehended Gilliam, advised him why he was being arrested, searched him, and then decided to place charges based on the contraband found during his search incident to arrest. Notably, when it found the first *Melton* factor to be present, the court stated, "The arresting officer explained in the report: 'Upon running Gilliam, dispatch advised he had an extraditable felony warrant out of Duval County. *I placed Gilliam in custody and advised him why*.'" *Id.* at 1284 (emphasis added). This statement constituted direct evidence demonstrating that the arresting officer intended to effect an arrest under the authority of the Duval County warrant and that he explained that intent to Gilliam *before* the officer searched Gilliam and found the contraband forming the basis of the separate local charges. *Id.* In this case, however, there is a degree of separation between the FDLE agents who initially apprehended Robinson and the SCSO deputies who ultimately arrested him. It was not the FDLE agents who indicated their intent to effectuate an arrest, but rather, it was the SCSO deputies who arrested Robinson on their local charges. As observed by the State in its closing argument, FDLE's conduct following the takedown constituted evidence of its intent *not* to arrest Robinson on the Duval County warrant.

There was competent substantial evidence to support the trial court's finding that there was not an arrest on the Duval County warrant. Notably, there was evidence to support that although the FDLE agents' original intent was to arrest Robinson on the Duval County warrant, their intent changed during the takedown and subsequent investigation. As the State argued, the FDLE agents could have seized Robinson solely based on reasonable suspicion or alternatively their intent changed once they viewed the contraband in plain sight in his car. According to the State, once the FDLE agents apprehended Robinson under these circumstances, they clearly did not have an intent to move forward to arrest him on the Duval County warrant, or else they would have taken some sort of affirmative step to effectuate an arrest on the Duval County warrant (or would have indicated to the SCSO deputies that they should move forward on those charges as well).

Robinson could have called the FDLE officers as witnesses to clarify their intent and meet his burden but chose not to do so. The error of not calling the FDLE agents to testify was apparently recognized by defense counsel when the State began to posit alternative theories as to why Robinson may have been detained. Robinson's counsel recognized this key issue, stating to the court: "So I don't know if I need to talk to the State about providing you those depos or getting an FDLE witness here. I did not expect that. And that is when the reasonable suspicion part came up, I'm stuck on what to do." However, Robinson instead decided to rely solely on his own testimony regarding what the FDLE agents communicated to him, but his testimony did not address the FDLE agents' subjective intent when they ultimately effectuated the takedown. As a result, he did not establish the subjective intent of the FDLE agents or at the very least that the FDLE agents' intent did not change.

Regarding the third *Melton* factor, the majority's position appears to be that Robinson's testimony was uncontroverted and dispositive as to whether there was a communication by the arresting officers that they intended to arrest Robinson on the Duval County warrant. In particular, the majority relies on the fact that Robinson stated he was told he was under arrest for the Duval County warrant as he was taken to the ground. Since the SCSO deputies arrived at Robinson's location within ten seconds after the takedown signal was given, the majority assumes that the deputies could not have heard what was communicated to Robinson as he was taken to the ground, and thus, his testimony was undisputed. While it is true that "[a]s a general rule, uncontroverted factual evidence cannot simply be rejected," it may be rejected if "it is contrary to law, improbable, untrustworthy, unreasonable, or contradictory." *Durousseau v. State*, 55 So. 3d 543, 560–61 (Fla. 2010). In addition, this principle usually arises where there is only one person to testify regarding the facts at issue. *See State v. G.H.*, 549 So. 2d 1148, 1149 (Fla. 3d DCA 1989) (finding that where an officer was the only person to testify at a suppression hearing, and where his testimony was neither impeached, discredited, controverted, self-contradicting, nor physically impossible, the trial court was bound to accept the officer's testimony as to what occurred for purposes of granting or denying the motion to suppress).

23

However, Robinson's testimony was not uncontroverted. The SCSO deputies specifically testified that they never told Robinson he was under arrest for the Duval County charges and that they did not hear the FDLE agents tell him he was under arrest for those same charges. And although it took the SCSO deputies approximately ten seconds from the takedown command to arrive at the scene, the circumstances indicated they were almost immediately within earshot of the FDLE agents. There is nothing in Robinson's testimony, or the testimonies of the SCSO deputies, demonstrating that the SCSO deputies were unable to hear what was transpiring as the FDLE agents were effectuating the takedown. Additionally, as this short period of time is crucial to the majority's position, Robinson's testimony was not clear as to the timing of the statements, as he provided conflicting testimony regarding when he was actually told he was under arrest for the Duval County charges. Robinson first testified that the FDLE agents told him about the Duval County warrant as they were approaching him, but then contradicted himself on cross-examination by stating that he was informed about the warrant as they were taking him to the ground.

Robinson's overall credibility was at issue as he was a convicted felon, rendering the veracity of his statement even more tenuous. Moreover, Robinson testified that he independently knew about the Duval County warrant because his child's mother had advised him of the warrant. He admitted he immediately speculated that the FDLE agents were approaching him based on the Duval County warrant because he was unaware of any other reason for their approach. This gave Robinson an independent basis for knowing about the Duval County warrant rather than being informed of such by the FDLE agents. The State keyed in on these credibility issues by arguing that Robinson's testimony was not credible because it was unlikely that the FDLE agents were advising Robinson of the Duval County warrant while they were securing him due to the high alert of the situation; rather, it was more likely that they were focused on ensuring he was secure on the ground and the other individuals in his party were secure instead of informing him of the charges.

24

Based on the evidence and arguments presented, the court ruled that the FDLE officers did not "arrest" Robinson on the Duval County warrant on November 2, 2015. The court gave detailed reasons on the record as to why there was not a valid arrest. Although the court did not specifically comment on Robinson's credibility, by determining that there was not a valid arrest for the purposes of *Melton* it can be inferred that the court necessarily disregarded Robinson's self-serving testimony.

Under the standard of review by which we are constrained, the record contains competent, substantial evidence to support the trial court's finding that there was no arrest on the Duval County warrant as the result of law enforcement's actions on November 2, 2015. *See Davis II*, 286 So. 3d at 174 ("The trial court's factual findings will be sustained if they are supported by competent, substantial evidence."); *see also State v. Coney*, 845 So. 2d 120, 132–33 (Fla. 2003) (holding that "competent, substantial evidence is tantamount to legally sufficient evidence, and a reviewing court must assess the record evidence for its sufficiency only, not its weight"; and stating that evidence contrary to a trial court's ruling "is outside the scope of the inquiry, for a reviewing court cannot reweigh the 'pros and cons' of conflicting evidence.") (internal citations omitted). The majority appears to hold that the trial court did not make the necessary factual findings or that Robinson's credibility was inadequately addressed to support its ruling. However, nothing in either rule 3.191 or *Melton* (and its progeny) requires a trial court to make any particular degree of factual findings regarding the *Melton* factors. Regardless, even if the trial court made conclusions, rather than factual findings, reversal is only required "[w]hen the appellate court is convinced that an express or inferential finding of the trial court is without support of any substantial evidence, is clearly against the weight of the evidence, or that the trial court has misapplied the law to the established facts." *Holland v. Gross*, 89 So. 2d 255, 258 (Fla. 1956) (explaining that under these circumstances, the trial court's decision is "clearly erroneous" and the appellate court will reverse because the trial court has "failed to give legal effect to the evidence" in its entirety). As a result, the decision of the trial court is not clearly erroneous, because based on the evidence presented, the court could have correctly concluded that Robinson failed to establish that there was an arrest under *Melton*.

In sum, as the Florida Supreme Court has articulated, the test here is not that of a "totality of circumstances." Rather, Robinson was required to establish all four *Melton* factors were present to successfully move for discharge. *Davis II*, 286 So. 3d at 174–75. Because Robinson failed to establish the presence of all four of *Melton* factors, the trial court correctly denied the motion to discharge.

## III.

I disagree with the majority that there was a valid arrest under a *Melton* analysis, and I consequently disagree with the majority's determination that Robinson should be discharged. However, insofar as the majority has opined that there was a valid arrest, I agree with their application of the current precedent in regard to a discharge under rule 3.191. I write further to elaborate on the problems arising from our current precedent's disregard of the plain text of rule 3.191.

## A.

Florida's rules of procedure "are construed in accordance with the principles of statutory construction." *Saia Motor Freight Line, Inc. v. Reid*, 930 So. 2d 598, 599 (Fla. 2006) (citing *Brown v. State*, 715 So. 2d 241, 243 (Fla. 1998) ("Our courts have long recognized that the rules of construction applicable to statutes also apply to the construction of rules.")). As such, the Florida Supreme Court's express adoption of the "supremacy-of-text" principles of statutory construction in *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020), applies to the construction of rule 3.191.

To interpret the meaning of legal texts, *Ham* counsels:

[W]e follow the "supremacy-of-text principle"—namely, the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts 56* (2012). We also adhere to Justice Joseph Story's view that "every word employed in [a legal text] is to be

expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157-58 (1833), *quoted in* Scalia & Garner, *Reading Law* at 69).

308 So. 3d at 946–47 (alterations in original).

The right of an accused to a speedy trial in Florida is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution. *Davis II*, 286 So. 3d at 174. In addition, rule 3.191 provides a procedural mechanism to enforce a defendant's right to a speedy trial. Rather than rely on a constitutional guarantee, Robinson relies on rule 3.191 for his relief. The relevant language of rule 3.191 is as follows:

**(a) Speedy Trial without Demand.** Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p). The time periods established by this subdivision shall commence when the person is taken into custody as defined under subdivision (d). A person charged with a crime is entitled to the benefits of this rule whether the person is in custody in a jail or correctional institution of this state or a political subdivision thereof or is at liberty on bail or recognizance or other pretrial release condition. This subdivision shall cease to apply whenever a person files a valid demand for speedy trial under subdivision (b).

27

Notably, rule 3.191(a) does not contain any language requiring an information be filed within this 175-day period. In addition, according to the express language of the rule, the remedy upon expiration of the 175-day speedy trial period is not an automatic discharge, but is instead specifically set forth in subdivision (p). Subdivision (p), entitled "Remedy for Failure to Try Defendant within the Specified Time," provides in pertinent part:

> (2) At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.

> (3) No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

The rule requires that to be forever discharged from the crime, a defendant would need to file a "Notice of Expiration of Speedy Trial" after the expiration of the prescribed time period. The State would then be granted a total of 15 days following the filing of a Notice of Expiration of Speedy Trial as a recapture period to bring a defendant to trial.

In this case, Robinson did not comply with the requirements of rule 3.191(p). He did not file a Notice of Expiration of Speedy Trial, nor was the State granted an opportunity for recapture. Based on the plain text of the rule, he should not be granted an automatic discharge.

However, the Florida Supreme Court (over 20 years ago) interpreted rule 3.191 to mean that the recapture period applies only when the information or indictment charging the defendant is filed within the speedy trial period, and the State is not entitled

to the recapture period if it fails to act until after the 175-day speedy trial period has expired. *State v. Williams*, 791 So. 2d 1088, 1091 (Fla. 2001). As a result, if the State fails to file charges before the 175-day speedy trial period lapses, the State "loses the benefit of recapture" and the defendant is entitled to discharge under rule 3.191. Thus, the court in *Williams* held "that the speedy trial time begins to run when an accused is taken into custody and continues to run even if the State does not act until after the expiration of that speedy trial period. The State may not file charges based on the same conduct after the speedy trial period has expired." *Id.*

The rule, as interpreted in *Williams*, is unworkable in the context of this case, where Robinson was never charged with a crime based on the Duval County warrant. If Robinson was in fact arrested, as claimed by the majority, it was only within the constraints of *Melton*. Formally, the warrant was never served on Robinson at the time of the November 2, 2015 encounter. He did not go through a first appearance proceeding on these charges. Rather, internally he was considered to have a detainer placed on him regarding the Duval County charges. Most importantly, since Robinson was not formally charged, the court process that should have alerted the State to the commencement of the running of the speedy trial time was never initiated; i.e., the State never received the executed warrant which would have alerted it to the fact that the speedy trial clock had been triggered. Without any such notification, the State could not have known that it needed to file an information in this case and as such, was not provided with the benefit of recapture under rule 3.191. As Justice Wells astutely observed in this context: "I reiterate that making the *speedy trial* rule run from the time of arrest rather than from the time of filing of an indictment or information ignores the reality of the organization of law enforcement and state attorneys in this state." *In re Amends.*, 886 So. 2d 197, 201 (Fla. 2004) (Wells, J., concurring).

The complications evidenced by the facts in this case demonstrate precisely why the recapture provision was added into the rule. Previously, rule 3.191 provided for an automatic discharge; and the recapture provision was later added into the rule in 1984. However, the *Williams* court, by its decision, added

the automatic discharge back into the rule. As Justice Lawson has pointed out:

> This is, after all, the speedy *trial* rule, not the speedy *discharge* rule. And, that opportunity for a speedy *trial* is what the express terms of the rule unambiguously provide a defendant and the State. Ironically, over thirty years ago we specifically removed, as antithetical to the rule's purpose, the very remedy of immediate discharge that the majority writes back in with its anti-textual "interpretation."

*Born-Suniaga v. State*, 256 So. 3d 783, 791 (Fla. 2018) (Lawson, J., dissenting) (citing Fla. R. Crim. P. 3.191 committee notes (1984)); *State v. Nelson*, 26 So. 3d 570, 576 (Fla. 2010) ("The creation of the recapture period emphasizes the purpose of the rule—'to promote the efficient operation of the court system and act as a stimulus to prosecutors to bring defendants to trial as soon as practicable, thus minimizing the hardships placed on accused persons awaiting trial.' In other words, the recapture period illustrates the principle that the defendant has a right to a speedy trial, not a right to a speedy discharge without trial.").

In sum, when applying Florida's principles of construction to rule 3.191, there is no sound means of reconciling *Williams* with the plain language of rule 3.191. It is impossible to read into rule 3.191 the remedy provided to Robinson by *Williams*—i.e., an automatic discharge without first affording the State an opportunity for recapture. However, though I disagree with *Williams*, I recognize that this court is constrained by its holding. *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020) ("In a case where we are bound by a higher legal authority—whether it be a constitutional provision, a statute, or a decision of the Supreme Court—our job is to apply that law correctly to the case before us. When we are convinced that a precedent clearly conflicts with the law we are sworn to uphold, precedent normally must yield."); *accord Lawrence v. State*, 308 So. 3d 544, 550–51 (Fla. 2020). Thus, Judge Makar and I agree that even if there had been a valid arrest under *Melton*, but for the opinion in *Williams* and its progeny, an affirmance would still be appropriate because Robinson did not comply with the procedural requirements of rule 3.191 which

would have entitled him to a discharge. As such, Judge Makar's certified question in his concurring opinion is justified, and I join in certification. Therefore, the precedent should be re-visited or a rule change should be implemented.[3]

## B.

Not only is the text of the rule not being adhered to, but the ruling in *Williams* transformed a procedural rule into a substantive rule. Rule 3.191 was designed to provide a procedure to protect the speedy trial right guaranteed by the Sixth Amendment. *See generally R.J.A. v. Foster*, 603 So. 2d 1167, 1169–72 (Fla. 1992); *State v. Bivona*, 496 So. 2d 130, 133 (Fla. 1986). However, the automatic discharge read into rule 3.191 by the Florida Supreme Court in *Williams* does not comport with Sixth Amendment jurisprudence and creates a statute of limitations not provided for by the legislature. *See Williams*, 791 So. 2d at 1093 (Wells, J., dissenting) (explaining that this rigid interpretation of rule 3.191 has "created a judicial statute of limitation without foundation in the language of the rule"); *Bulgin v. State*, 912 So. 2d 307, 314 (Fla. 2005) (Wells, J., dissenting) (stating that an

---

[3] Indeed, this exact rule change has been proposed and is presently pending before the Florida Supreme Court on its own motion. The proposed change to rule 3.191 seeks to rectify the issues caused by *Williams*, and would require the defendant to file a notice of expiration of speedy trial and then afford the state an opportunity for recapture (rather than being granted an automatic discharge) in all cases. *In re Amends.*, Case No. SC22–1123 (proposed on Jan. 18, 2024) (not yet reported). Notably, in addition to the mandatory recapture period, the proposed change to rule 3.191 provides that the 175-day speedy trial period does not begin until a defendant has been formally *charged* (as opposed to arrested), thus effectively eliminating the need for a *Melton* analysis concerning whether a defendant has been "arrested" within the meaning of rule 3.191. *Id.* Finally, the proposed rule change provides that where it is determined that rule 3.191 has been violated, any discharge under the rule shall be without prejudice unless there is a determination that the defendant's constitutional right to a speedy trial has been violated. *Id.*

automatic discharge "eviscerates the statute of limitations enacted by the legislature"); *Reed v. State,* 649 So. 2d. 227, 229 (Fla. 1995) (Overton, J., dissenting) (stating in regard to the creation of an automatic discharge under 3.191, "I write to express my belief that the majority has now crossed the line and made our speedy trial rule substantive rather than procedural by this construction and that, consequently, it is unconstitutional.").

Additionally, although the Florida Constitution grants the Florida Supreme Court exclusive rule-making authority, this power is limited to rules governing procedural matters and does not extend to substantive rights. *Boyd v. Becker*, 627 So. 2d 481, 484 (Fla. 1993). The Florida Supreme Court has previously stated that statutes of limitations provide substantive rights and supersede our procedural rules. *Id.* However, under *Williams*, the procedural rule supersedes legislative authority in establishing a judicially created statute of limitations. In this case, Robinson was initially charged by information with attempted first-degree murder. There is no statute of limitations for that charge, as it is a life felony. § 775.087(1), Fla. Stat. (2021). Therefore, rule 3.191, as interpreted in *Williams*, effectively creates a 175-day statute of limitations for an offense which otherwise carries no statutory time limit for prosecution. See *Williams v. State*, 757 So. 2d 597, 601 (Fla. 5th DCA 2000) (Sharp, J., concurring) (stating that "the speedy trial rule as interpreted by case law, has drastically shortened the statute of limitations for prosecution of crimes, and as such it has become the defendant's best defense and ally").

In addition, the Sixth Amendment guarantees the accused the right to a speedy trial. The Sixth Amendment, however, does not provide strict guidelines or timing rules as prescribed in rule 3.191. Rather, the Sixth Amendment generally provides a more flexible balancing test to determine whether the right has been violated. *See Barker v. Wingo*, 407 U.S. 514 (1972). In *Barker*, the United States Supreme Court provided the following analysis:

> A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some

might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Id*. at 530. Thus, the rule becomes one of a totality of the circumstances test, where no one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; but "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

Rule 3.191 is designed as a procedure to protect this constitutional right. However, Robinson has not alleged that his Sixth Amendment right has been violated, nor has he alleged any prejudice. As a result, he has no substantive claim for a dismissal under the Sixth Amendment. Robinson's claim is based solely on the passage of time under rule 3.191. In this regard, the Sixth Amendment speedy trial rule was "not primarily intended to prevent prejudice to the defense caused by passage of time." *United States v. MacDonald*, 456 U.S. 1, 8 (1982). Rather, the right is primarily "designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id*. However, in *Williams*, the court created an alternative substantive deadline based not on the Sixth Amendment jurisprudence, but merely on the passage of time. Robinson was never prejudiced in this matter, as he did not suffer from a lengthy pre-trial incarceration because he was already serving a prison sentence on the Suwannee County charges. *See State v. Joyner*, 460 So. 2d 584, 585 (Fla. 5th DCA 1984) (holding the defendant failed to show his speedy trial rights were violated and stating: "There was no oppressive pretrial incarceration because Joyner was serving a lengthy state prison sentence."). Thus, he would have had no remedy for a violation of his Sixth Amendment right but for the judicial interference in this area of substantive law vis-à-vis *Williams*. As Justice Lawson aptly stated, these unnecessary automatic discharges are created when the "judiciary unjustifiably interferes with substantive law or executive discretion under the

guise of procedural rulemaking." *Born-Suniaga*, 256 So. 3d at 792 (Lawson, J., dissenting).

## IV.

I respectfully dissent because I do not think that Robinson met his burden to show that the four *Melton* factors were present and accordingly believe that an affirmance is appropriate. However, I concur with the majority to the extent of their application of the current precedent in *Williams* and its progeny in regard to a discharge under rule 3.191 and their acknowledgment that the precedent in *Williams* should be re-visited or a rule change should be implemented. Additionally, as indicated above, this case precisely illustrates the unworkability of the current precedent interpreting rule 3.191 in cases where the State has not been alerted to the need to file an information and where the State has not been given the benefit of the recapture provision provided by rule 3.191. As the Florida Supreme Court has stated, Florida's focus on the *Melton* factors unnecessarily overcomplicates the inquiry. *Davis II*, 286 So. 3d at 175. As this Court has previously explained, and the Supreme Court recognized, there is a legitimate and unresolved concern that "the narrowed focus on the *Melton* factors, along with the wording of the current rule [3.191], could, in theory, lead to a determination that an individual has been arrested for speedy trial purposes even though he or she was not arrested for the purpose of being held to answer in court for criminal charges." *Id.* This is exactly what has happened in this case. Robinson can point to no violation of a substantive right that would provide him with an automatic discharge on this attempted murder charge. However, based on the decision in *Williams*, a procedural rule has supplanted substantive laws. As the Florida Supreme Court has appropriately stated, "a procedural rule designed to protect a substantive right should come into play when the substantive right is implicated—not before." *Id.* Therefore, I reiterate the need for this precedent to be re-visited or re-evaluated through the rule making process.

MAKAR, J., concurring in part and in result.

In this speedy trial case, the record supports the conclusion that each of the four factors in *Melton v. State*, 75 So. 2d 291 (Fla. 1954), were met and thereby established that an arrest was made for purposes of triggering the 175-day period set forth in Florida's speedy trial rule. In this regard, the sole purpose of the FDLE's encounter with Robinson in Live Oak after the Suwannee Music Festival was to arrest him on the Duval County warrant, which they did; that local sheriff's officers arrested Robinson on drug charges arising from a post-arrest search does not negate FDLE's arrest on the Duval attempted murder and felony handgun possession charges—two concurrent arrests are permissible. Plus, the record doesn't support the notion that FDLE and the sheriff's officers called an audible during the arrest with FDLE essentially making a split-second decision to abandon its monthslong plan to arrest Robinson; instead, both authorities understood that they were both arresting Robinson, albeit on different charges.

The parties contest the third *Melton* factor, which is whether there was "communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest[.]" *Id.* at 294. Again, the record establishes that the FDLE officers' sole purpose was to arrest Robinson and that Robinson understood that he was being arrested. *Melton* does not require that the arresting officer specify the details of the warrant involved, only that an arrest is intended. Even if Robinson's undisputed testimony was less than credible, it would nonetheless be consistent with the statutory obligation of an arresting officer to "inform the person to be arrested of the cause of arrest and that a warrant has been issued" absent circumstances that are not present in this case. *See* § 901.16, Fla. Stat. (2023) (entitled "Method of arrest by officer by a warrant"). Officers are presumed to comply with their statutory duties; thus, even though they did not testify, the FDLE officers who arrested Robinson presumptively informed Robinson of the reason for the arrest and that a warrant existed. On the record presented, the third *Melton* factor is met, thus I concur in the conclusion that Robinson was

arrested for purposes of triggering Florida's speedy trial rule. And because the State did not file the Duval County charges for almost two years, the 175-day period in the rule had expired.

Next is the remedial question. On this point, the record shows that Robinson was less than vigilant in protecting his right to a speedy trial and did not avail himself of the procedural protections of Florida Rule of Criminal Procedure 3.191. Were the jurisprudential slate a clean one, affirmance would be in order because of these shortcomings. What stands in the way, as Judge Boatwright points out, is the supreme court's decision in *State v. Williams*, 791 So. 2d 1088, 1091 (Fla. 2001), which concluded that the "State may not file charges based on the same conduct after the speedy trial period has expired." Judge Boatwright's analysis demonstrates why *Williams* needs to be reconsidered and its holding modified; and why rule 3.191 needs to be modified as well to provide greater clarity. In addition, I would certify a question of great public importance, such as "Whether the holding in *State v. Williams*, 791 So. 2d 1088, 1091 (Fla. 2001), should be modified to clarify that Florida Rule of Criminal Procedure 3.191 does not establish substantive rights including the right to automatic discharge after expiration of the rule's prescribed time period."

In summary, I concur in Chief Judge Edwards's opinion, which concludes that the *Melton* factors were met and that the speedy trial time period expired; I also concur in parts III (A)-(B) of Judge Boatwright's opinion and in result because that's what is required under the holding of *Williams*, a precedent that ought to be revisited and for which a certified question is justified.